No. 16,698.

CITY AND COUNTY OF DENVER ET AL. *v.* THRAILKILL ET AL.
(244 P. [2d] 1074)

Decided May 19, 1952.

Mr. LEONARD M. CAMPBELL, Mr. BURTON CRAGER, Mr. ABE L. HOFFMAN, for plaintiffs in error.

Mr. NATHAN R. KOBEY, Mr. IVOR O. WINGREN, Mr. ALBERT T. FRANTZ, for defendant in error Publix Cab Company, Mr. JOHN F. MUELLER, for defendant in error Zone Cab Company, Messrs. DICKERSON, MORRISSEY & ZARLENGO, for individual named defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to the parties as they appeared in the trial court where defendants in error were plaintiffs and plaintiffs in error were defendants.

The individual plaintiffs earn their livelihoods as taxicab drivers who own their equipment and operate under contracts with the companies with which they are severally affiliated. These companies are the corporate plaintiffs. The method of operation carried on by the plaintiffs is called the owner-driver system and is iden-

tical with that which we described at length in the case of *International Brotherhood v. Publix Cab Co.*, 119 Colo. 208, 202 P. (2d) 154.

It is not disputed that this system of taxicab operation was firmly established in Denver for many years prior to 1947 when Ordinance No. 165, Series of 1947, was adopted by the city council. This ordinance was a licensing and regulatory measure under the terms of which driver-owner system taxicabs, as well as company owned employee driven cabs, continued to operate in Denver. It provided for the issuance of master licenses, and under said provision such licenses were issued to the corporate plaintiffs as well as to the companies which owned their cars and employed drivers. It also provided for the issuance of licenses to drivers of taxicabs; for the suspension, revocation and renewal of licenses; and imposed reasonable and necessary restrictions upon the use of taxicabs within the city; all within the unquestioned power of the city council to subject the operation of taxicabs to reasonable regulation in the exercise of the police power.

Ordinances No. 53 and No. 109, Series of 1950, were thereafter adopted by the city council. The former, in so far as pertinent to this action, amended section 4 of the 1947 ordinance by adding thereto the following: "No master license nor any part thereof nor any authority claimed thereunder shall be saleable, transferable or assignable whether by act of the parties or by operation of law." In addition to the foregoing, section 4 was amended further by substituting the word "may" for the word "shall" in the clause relating to renewals of licenses. The said clause as amended reads as follows: "All master licenses shall expire on December 31 of each year unless sooner revoked, and *may* be renewable from year to year * * *." (Italics supplied.)

Ordinance 53, Series of 1950, did not in express terms abolish, authorize or recognize the owner-driver system then prevalent in the cab business.

Ordinance No. 109, Series of 1950, did, in positive terms, purport to prohibit the owner-driver system in which plaintiffs were engaged. It amended section 15 of the 1947 ordinance to provide that: "No person shall drive or be permitted to drive a taxicab on the streets of the City and County of Denver for business purposes unless such person is a licensed driver who either is an operator or an employee of an operator who is paid a fixed definite wage and/or a fixed commission based on the gross amount of fares received from passengers. The Master License of any operator who shall violate this Section may in the discretion of the Manager be revoked or suspended in whole or in part as provided in Section 6 hereof."

Other changes were made in the ordinance making clear the intent of the city council to prohibit the business operated by plaintiffs; thus, section 18 was amended to read in part as follows: "No taxicab license shall be granted to any operator unless such operator is the bona fide, beneficial owner of the taxicab. * * * No taxicab license shall be issued to any operator where such taxicab is to be hired, leased, rented, or made the subject of a rental and purchase arrangement to or with any driver thereof."

Plaintiffs brought this action for declaratory judgment. They challenged the legality of ordinances No. 53 and No. 109, series of 1950, upon constitutional grounds, and sought a decree "declaring said ordinances or the illegal parts thereof, invalid and unconstitutional, and further that the Court define and determine the rights, duties or status of the parties hereto." Plaintiffs further sought relief by injunction restraining defendants from acting pursuant to the provisions of the ordinances thus assailed.

The trial court held the ordinances unconstitutional in certain particulars; adjudged that all sections of ordinance No. 109, supra, were so interdependent and insep-

arably connected in substance that the city council would not have passed said ordinance without including all of the sections thereof; and that no part of said ordinance could be upheld upon the ground that it was severable from unconstitutional provisions. Judgment accordingly was entered as prayed for by plaintiffs, and defendants bring the case here for review by writ of error.

By Ordinance No. 53, series of 1950, section 4 of the 1947 ordinance was amended to read: "The Manager shall cause to be made such investigation of each applicant and of the correctness of each application for a master license as in his judgment is necessary to determine whether the applicant is qualified, fit, able and suitable to engage in the business of operating taxicabs in the method proposed. If the determination of the Manager shall be in favor of the applicant, he shall issue the master license, evidenced by a signed certificate, upon receipt of such license fee. If the determination of the Manager shall be against the applicant, the Manager shall by registered mail inform said applicant or the duly authorized agent thereof that the application has been denied, briefly stating the reason therefor. All master licenses shall expire on December 31 of each year unless sooner revoked, and may be renewable from year to year by filing a written application for renewal and making payment of the annual license fee herein provided on or before that date. No master license nor any part thereof nor any authority claimed thereunder shall be saleable, transferable or assignable whether by act of the parties or by operation of law."

With reference to this provision the trial court held, inter alia: "(1) That Section 4 of Ordinance 53, Series 1950, is beyond the power of the City Council to enact for the reason that the section arbitrarily prohibits the transfer or sale or assignment by operation of law of a master license or any part thereof or any authority claimed thereunder and that said Section 4 leaves the

issuance or renewal of master licenses to the Manager without any standards for his determination as to whom he grants a license or to whom he denies the same and grants him arbitrary power thereover and is unconstitutional, ultra vires and void."

The trial court also held that the amendments to be made by Ordinance 109, Series 1950, could not be sustained and pointed out four distinct provisions thereof which in its opinion were in violation of the constitutional rights of plaintiffs. It will not be necessary to separately consider each of these points upon which the trial court based its judgment. As we view the case, they are consumed and fully disposed of in connection with the second question hereinafter stated and answered. We agree with the trial court that the provisions of said ordinance, to which objections are made, are not severable under the rule announced in *City and County of Denver v. Lynch*, 92 Colo. 102, 18 P. (2d) 907. Certainly, if the main object to be accomplished by Ordinance 109, namely, the destruction of the owner-driver system, is without validity, the other amendments which clearly were incidental thereto cannot properly be sustained.

Questions to Be Determined.

First: *Does the city council have the power, in the regulation of the taxicab business, to provide that no master license nor any authority claimed thereunder shall be saleable or transferable; and further, to provide that renewals thereof shall lie within the discretion of the licensing authority?*

This question is answered in the affirmative. The taxicab business unquestionably is subject to reasonable regulation in the proper exercise of the police power admittedly possessed by the City and County of Denver. "One of the methods most frequently used by municipal corporations for the exercise of their powers of regulation is to require permits to be obtained from the council or a public board or other official for the doing of certain

acts, and it is generally held that this is a proper method and within the powers of the corporation." 62 C.J.S., p. 327, §167.

It unquestionably is true that the operation of taxicabs is a convenience which the public demands, and such business is harmless in itself and useful to the community. However the nature of the business is such that reasonable regulation is permitted in the public interest. It cannot successfully be questioned that the municipality has power to limit the number of taxicabs which shall be licensed to operate within the city, and generally to regulate the business in the manner provided by the 1947 ordinance. No fault is found with that ordinance by plaintiffs. They contend however, and the trial court held, that when by an amendment to that ordinance a master license (authorizing the operation of a considerable number of motor vehicles as taxicabs) was declared to be nontransferable, and the renewal thereof was placed within the sound discretion of the licensing authority, the council acted in excess of its powers and in violation of the constittuional rights of plaintiffs.

We consider the nature of the "rights" represented by the master license. The license is nothing more nor less than the grant of a privilege to enter upon a business activity which, because of the ordinance, would be unlawful except for the issuance of the permit; it is personal to the grantee; it is revocable for cause; it is renewable within the sound discretion of the licensing official who can be reached by proper proceedings in the event of arbitrary abuse of that discretion; it is evidence of a personal privilege and is not property in a constitutional sense; and no vested rights are acquired when it is obtained. *Allen v. City of Kosciusko,* 207 Miss. 343, 42 So. (2d) 388; *Kizee v. Conway,* 184 Va. 300, 35 S.E. (2d) 99; 60 C.J.S. 481; 62 C.J.S. 331.

The prohibition of transfers of master licenses to persons unknown to the licensing authority is a reason-

able regulation which bears a real and substantial relation to the public safety and welfare. Even in the absence of the prohibition against transfers as contained in the amended ordinance, the city would not be bound by an assignment of such license. One who purchases the tangible equipment with which to operate a taxicab business can make application for a "master license" and subject himself to the investigation essential to the granting thereof. If the discretion vested in the licensing authority is abused, or if his application is arbitrarily rejected, he has recourse to appropriate legal proceedings.

We do not construe the judgment of the trial court to be an absolute prohibition against the transfer of a license or discretionary renewal thereof. It only condemns an ordinance which "arbitrarily" prohibits transfers and renewals, and seems to be based upon the fact that the amended ordinance leaves to the manager, without any standards for his guidance, the power to grant or deny a license, and thus grants him arbitrary control thereover. With this conclusion we agree. *People v. Stanley*, 90 Colo. 315, 9 P. (2d) 288.

Second: *Does a municipality have authority, in the exercise of the police power or otherwise, to abolish the driver-owner system of taxicab operation by the adoption of an ordinance which prohibits the issuance of a license to any applicant unless such applicant is the bona fide beneficial owner of the taxicab; and to require that the driver of a taxicab shall be either the owner thereof or an employee of the owner who is paid a fixed definite wage or a fixed commission based on the gross amount of fares received from passengers?*

This question is answered in the negative. Counsel for defendants argue that power to prohibit the owner-driver system of taxicab operation rests in the city council and that such power is based upon two fundamental concepts as follows: First, the right of the council to control the use of the streets of the city by private per-

sons for private gain is plenary, and any limitation or restriction may be imposed upon such use whether reasonable or unreasonable; and second, under the police power the city council has authority to regulate and condition the use of the streets in the interest of public safety, morals and health. The following typical statements are cited in support of the first mentioned of these contentions: "Individuals do not have the inherent right to conduct their private businesses in the streets of a city. A city can prohibit the owners or operators of taxicabs and buses from transporting passengers for hire in such vehicles upon the streets of the city. The transportation of passengers for hire in such vehicles or otherwise is a privilege which the municipality can grant or withhold. As the owners or operators of taxicabs or jitney-buses have no right to transport passengers for hire on the streets of the city, and as the city can prohibit wholly or partially the conduct of such business in its streets, if the city sees fit to grant permission to individuals to conduct such business in its streets it can prescribe such terms and conditions as it may see fit, and individuals desiring to avail themselves of such permission must comply with such terms and conditions, whether they are reasonable or unreasonable." *Clem v. City of LaGrange*, 169 Ga. 51, 149 S.E. 638. We quote from 37 American Jurisprudence, page 533, section 18, as follows: "Individuals desiring to avail themselves of the privilege of operating taxicabs or jitney buses in city streets must comply with such terms and conditions as the city, within its authority, has prescribed, whether they are reasonable or unreasonable."

Counsel for the city contend that these expressions, and other comparable statements taken from cases cited, indicate that the city council has authority over the use of the public streets above and beyond that which flows from the police power. However, most of the decided cases unquestionably treat the subject in connection with

the exercise of the police power, and numerous general statements of legal principles relate to it in that vein. In 25 American Jurisprudence, page 544, section 253, we find the following: "The use of highways and streets may be limited, controlled, and regulated by the public authority in the exercise of the police power whenever and to the extent necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it." Also we find the following in 37 American Jurisprudence, at page 533, section 19: "The privilege of using public highways for motor transportation does not amount to a natural or an absolute and unqualified right, but is a franchise, special and extraordinary, a mere privilege, to be withheld or granted as the legislature sees fit, and subject to regulation by the state acting under its police power as sovereign authority."

██ Without attempting to harmonize the expressions contained in opinions from other jurisdictions, or statements of general rules which seem to be in conflict, we limit ourselves to declaring the law for this jurisdiction. We hold that there is no authority in a municipality to prohibit the use of the city streets by any citizen or corporation in the carrying on of a legitimate business, harmless in itself and useful to the community, which is independent of the police power under which reasonable regulations in the promotion of the public order, safety, health and welfare are proper. We further hold that any arbitrary and unreasonable refusal on the part of city officials to permit the use of city streets for business purposes will not be upheld in this jurisdiction. If a restriction upon the use of the streets of the city is to be valid, the restraint upon said use must be based on the proposi-

tion that it is a reasonable regulation adopted in the exercise of the police power, and that it bears a fair relation to the public health, safety, morals or welfare, and has a definite tendency to promote or protect the same.

The contention, that an unreasonable, arbitrary and capricious prohibition against the use of city streets must be sustained simply because the person against whom the restraint operates is engaged in the business of providing transportation for hire, is completely out of harmony with the American constitutional concept of fundamental freedoms and liberties, under which the individual has the right to engage in a lawful business which is harmless in itself and useful to the community, unhampered by unreasonable and arbitrary governmental interference or regulation. Our court, in *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, said in part: "The power of the legislature however, is not such as may unreasonably interfere with the undoubted right of every citizen to follow any lawful calling, business, or profession, he may choose, *subject only to reasonable regulation;* for the right to labor and to receive the fruits of such labor is a natural and inherent right always protected by the constitution." (Italics supplied.) We quoted this language with approval in *Lipset v. Davis,* 119 Colo. 335, 203 P. (2d) 730. The fact that the "calling" or "business" under consideration in the instant case, and the "right to labor and to receive the fruits of such labor," involve the use of the streets of the city over which the commerce and business of the community must flow, does not deprive the citizen of his basic right to demand that governmental regulation of business or restraints upon freedoms must be reasonably essential and necessary in the public interest.

We now consider the second ground upon which defendants rely in justification of the ordinance prohibiting driver-owner taxicab operation, namely, that said ordinance is valid as a proper exercise of the police power.

■ At the common law there was a public right to operate stage coaches for hire on the public streets. In *City of St. Paul v. Twin City Motor Bus Co.*, 187 Minn. 212, 245 N.W. 33, 35, the common-law rule is stated as follows: "At common law the right of use of the highways is general and includes all reasonable kinds of travel and transportation. The highways are to serve the public. They are for the use of all. There is no doubt that at common law there is a *public right to operate a motor bus on the public streets for the transportation of passengers for hire."* (Citing many cases.) (Italics supplied.) It follows, therefore, that express legislative prohibition is necessary to make plaintiffs' use of the streets unlawful. Since the ordinance under attack, which purports to prohibit the driver-owner system, is in derogation of the common law, it must be strictly construed in favor of the person against whom its provisions are sought to be applied. *Hart v. Board of Examiners,* 129 Conn. 128, 26 A. (2d) 780; *National Exhibition Co. v. City of St. Louis,* 235 Mo. App. 485, 136 S.W. (2d) 396.

■ The driver-owner method of taxicab operation has been firmly established in Denver since 1932. Full and complete control over the actual operation of the taxicabs involved, in so far as the public interest is concerned, can be accomplished by the reasonable regulatory provisions of the 1947 ordinance. The method of operation has involved the investment of substantial sums of money by both the corporate and individual plaintiffs. Their business is a property right and as such it is entitled to protection against municipal action, the effect of which would be to deprive plaintiffs of their property without due process of law. *Liggett Co. v. Baldrige,* 278 U.S. 105, 49 Sup. Ct. 57, 73 L. Ed. 204.

Since the ordinance would unquestionably put plaintiffs out of business, it must be declared unconstitutional unless it can be justified as a valid exercise of the police power. An attempt is made to sustain the ordinance

upon the ground that it is reasonably calculated to promote the safety, morals, health and welfare of the public at large. If the ordinance can logically be thus supported, it becomes a valid police regulation concerning a business subject thereto, and cannot be assailed upon constitutional grounds.

The determination we are called upon to make is whether the ordinance has a real and substantial relation to the accomplishment of those objectives which form the basis of police regulation. As stated by Mr. Justice Butler in his concurring opinion in *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 P. (2d) 555: "To be valid, such legislation must bear a fair relation to the public health, safety, morals or welfare and tend to promote or protect the same."

We are fully satisfied that the record before us fails entirely to show any fair relation between the ordinance in question and the public health, safety, morals or welfare. Said ordinance cannot be said "to tend to promote or protect the same." It is clear to us that at every point where any of these purposes are likely to be involved, or in any manner promoted or protected, the ordinance of 1947 makes complete and adequate safeguards in the public interest. The ordinance under attack deals only with the ownership of the title to automobiles used as taxicabs and with the compensation which shall be received by those who actually drive them.

There is nothing whatever in this record to indicate that the mere fact that the title to an automobile, used as a taxicab, is held by an individual driver of the cab rather than by the holder of a master license who owns several other taxicabs, has anything whatever to do with public health, safety, morals, or welfare. The claim rests wholly upon conjecture and is not supported by anything of substance. We cannot follow the reasoning of the Supreme Court of North Carolina as expressed in *Victory*

*Cab Co., v. Shaw,* 232 N.C. 138, 59 S.E. (2d) 573, in so far as it tends to uphold such an ordinance as a proper exercise of police power. We think the case is comparable, in so far as the applicable rule is concerned, to that considered by the Supreme Court of the United States in *Liggett Co. v. Baldrige, supra.* In that case a statute provided that "every pharmacy or drug store shall be owned only by a licensed pharmacist, and no corporation, association, or copartnership shall own a pharmacy or drug store, unless all the partners or members thereof are licensed pharmacists; * * *." An attempt was made to sustain the statute upon the ground that it was a valid exercise of the police power in that it tended to promote the public health. The court said, inter alia: "The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare. Here the pertinent question is: What is the effect of mere ownership of a drug store in respect of the public health?" The court held that there was no substantial relationship between such ownership and the public health. So, in the instant case, the pertinent question is: What is the effect of mere ownership of a motor vehicle in respect of the public safety, morals, health or welfare? We answer the query with the statement that mere ownership of a taxicab, by one not the owner of a taxicab company, has no reasonable relation to public health, safety, morals or welfare.

The trial court, although its judgment was based upon reasons different from those expressed in this opinion, reached the correct result with regard to Ordinance No. 109, Series of 1950; accordingly the judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE KNAUSS not participating.