## No. 17,907.

CITY AND COUNTY OF DENVER, ET AL. *v.*
PUBLIX CAB CO., ET AL.
(308 P. [2d] 1016)

Decided March 25, 1957.

Mr. JOHN C. BANKS, City Attorney, Mr. HORACE N. HAWKINS, Jr., Deputy, Mr. TEDFORD DEES, Assistant, Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, of Counsel, for plaintiff in error City and County of Denver.

Mr. WALTER M. SIMON, Mr. CHARLES A. GRAHAM, for plaintiff in error Yellow Cab, Inc.

Mr. JOHN F. MUELLER, Mr. IVOR O. WINGREN, Mr. HENRY E. LUTZ, Messrs. KOBEY & MITCHELL, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS action challenges the right of the City and County of Denver to grant an exclusive revocable "concession grant" or revocable permit for the operation of a taxicab stand and limousine service at Stapleton Field, the municipal airport owned and operated by the City and County of Denver.

Plaintiffs in error were defendants below. For ease of reference we will refer to plaintiffs in error as defendants or to the City and County of Denver as the "City"; R. Y. Batterton, Manager of Public Works of said City as the "Manager"; and Yellow Cab, Inc. as Yellow Cab. Defendants in error will be referred to as plaintiffs as they appeared in the trial court. The Attorney General of Colorado was made an intervenor by court order but no reference is necessary to him herein.

The history of Stapleton Field and the right of the City to make an exclusive concession grant to a taxicab company were fully discussed by this court in *Rocky Mountain Motor Co. v. Airport Transit Co.,* 124 Colo. 147, 235 P. (2d) 580. We need not repeat the history here except to point out that part of said airport lies within the City limits of the City and County of Denver (and includes the area involved here) and part lies in the unincorporated area of Adams County, Colorado. Since that case was decided, however, the City has materially changed the physical makeup of its airport by altering streets and parking areas and by the installation of parking meters. We are now called upon to determine whether the changes have affected the City's previously acknowledged proprietary control over the area.

The present controversy stems from the City awarding to Yellow Cab an exclusive, revocable "concession grant" to operate a taxicab stand and limousine service from and to the airport. This concession does not, however, prevent or prohibit other lawfully licensed taxicab operators, such as plaintiffs, from delivering passengers to the airport, or, if they were specifically called to do so, from picking up passengers there. It appears that this concession grant, or permit, awarded to Yellow Cab the sole right to maintain a stand or stands at the airport building and on the grounds, and the sole right of solicitation at the airport. The City and Yellow Cab contend the airport with its approaches is entirely the private property of the City. The plaintiffs contend that the operation of a public airport is not a proprietary but a public or governmental operation entitling them to compete for airport business on equal terms with Yellow Cab. The City, in establishing traffic facilities on approaches to the airport, did not formally dedicate streets and other areas; though it did vacate a public street formerly known as Ulster Street, because it interfered with its overall plans.

It is pointed out that since the adoption of the Denver Charter Amendment on June 16, 1953, which amended Section 280 of the Charter, and the adoption in 1954 of an amendment to the State Constitution known as Article XXV, the City no longer licenses taxicabs, that power being now vested in the Colorado Public Utilities Commission. It is also pointed out that the concession granted does not fix the fares to be charged for taxi service to or from the airport, but it merely provides that such charges shall be the prevailing rates which may from time to time be lawfully established.

Since our decision in the *Rocky Mountain Motor Company* case, supra, an amendment to the City Charter has re-delegated some functions relating to operation of the airport within the City government. In November 1955, the manager, as authorized, called for bids on exclusive taxicab and limousine service. After some controversy only one bid was submitted, and that by Yellow Cab. Following negotiations with the sole bidder, the manager on January 11, 1956, awarded the concession in question to Yellow Cab.

Beginning in January 1956 plaintiffs refused to recognize the right of the City to grant an exclusive concession and in disregard thereof proceeded to have their drivers solicit business at and on the airport roadways, parking sites, and discharge and pickup points, this area being that referred to in the record and briefs as the "concourse" and we will also so refer to it in this opinion when necessary. Plaintiffs' drivers were given approximately 1200 police court summonses for allegedly trespassing and parking on private property. It appears that the police court quashed the summonses when they came before it and no appeal was taken from such action. New summonses have since been issued under an amendment to Article 371 of the Revised Municipal Code effective January 25, 1956.

Claiming such arrests and summonses were illegal and void, the plaintiffs sought an injunction and declara-

tory judgment against the city. The City counterclaimed asking that plaintiffs be enjoined and restrained from occupying or using, in any manner, any portion of the said airfield concourse except when discharging taxicab passengers or in picking them up after being expressly called for that purpose.

The learned trial judge made a voluminous Findings, Order and Judgment which sustained the plaintiffs. Motion for a new trial was denied and defendants are here on writ of error.

It is urged for reversal:

1. That the court erred in holding that the concourse and those portions of Stapleton Airfield which are used for a taxicab stand and feed line were public places subject only to the police powers of the City and County of Denver and that the grant of the exclusive use of the taxicab stands and feed line could not be made:

(a) That Denver operates the said airport in its proprietary capacity and exclusive grants can be made to the use of portions thereof.

(b) That the concourse, including the taxicab stand and feed line, was not a public place which was subject only to the police powers because it had not been dedicated to public use by ordinance of the council.

(c) That Denver is not estopped from denying to plaintiffs the use of the feed line and taxicab stand at Stapleton Airfield.

2. That the granting of an exclusive concession for a charge based upon the percentage of gross receipts did not amount to a rebate.

3. That there has been no delegation of legislative power by the council.

As we view the record, the validity of the City's position depends primarily upon one phase of this proceeding and it is not necessary to consider and determine any of the other points presented.

*QUESTION TO BE DETERMINED:*

■ *Where the City of Denver owns and operates a*

*Municipal airport in its proprietary capacity, but by its acts and conduct has dedicated the highways, streets and approaches thereto to public use, can it grant exclusive licenses or franchises thereat for taxicab and limousine services?*

This question is answered in the negative.

The pleadings and evidence show that, since the *Rocky Mountain Motor Co. v. Airport Transit Co.* decision, the City has, by ordinance, under its governmental powers, installed parking meters to regulate traffic upon the concourse in question; that in the enforcement of the concession granted Yellow Cab it has exercised its *police powers* at and on the concourse by issuing traffic tickets to drivers of the several plaintiff companies for alleged trespass on private property; and it has materially altered the physical appearance of the area so that a driver cannot tell when he enters upon what the City claims to hold in its proprietary capacity.

Here we have the anomalous situation of a City giving police court summons to taxicab drivers for trespassing on what it claims to hold as private property, admittedly bought with taxpayers' money, and, simultaneously claiming a part of the same area, by some chameleon process, to be public property by virtue of having installed parking meters thereon. Thus the taxi driver is ticketed in this Dr. Jekyll and Mr. Hyde situation because he parks on *private property* and the ordinary citizen is ticketed for meter violations because he is on *public property*.

Obviously the City cannot have its cake and eat it too, or like the Roman god Janus face both ways. Either the so-called concourse is public property subject to customary regulations under the City's general police powers, or it is private (or proprietary) property and is to be treated as that of any private citizen. A municipality cannot use its police or governmental powers to operate its proprietary businesses. As to the latter a City stands on no higher plane than any individual

138

citizen. The inequitable doctrine advanced in *City of Oakland v. Burns,* (Calif. 1955) 289 (2d), 271, cited by counsel for the City, where it is held that a City operating a proprietary function could nevertheless cloak it with the City's immunity against prescriptive rights and supposedly against other defenses, is neither persuasive nor convincing.

The City urges that there can be no dedication except by express ordinance as provided for by law, and cites *City of Oakland v. Burns, supra,* as authority. We point out, however, that though that case also involved the question of whether a street within a proprietary city airport was a public or private way so as to permit the award of an exclusive taxicab concession, the similarity ends there. In that case it was denied that prescriptive rights could apply (we think wrongly if they in fact existed), and it was held that any acts of the Board of Port Commissioners could not result in a common law dedication. The court said that acts, to constitute a dedication, must be by a body legally capable of so acting. No parking meters had been installed at the Oakland Airport with revenues going to the general city fund as in the case before us, and no police power was shown to have been exercised over the street in question. Here we have the City acting under and by authority of a City Council admittedly vested with general powers. That case is no authority to avoid the common law dedication urged here although it does hold that when a statutory method of dedication is provided for a city, that method is exclusive and a common law dedication cannot exist. Such is not the law in Colorado.

In their opening brief the City and Yellow Cab say "A common law dedication, when a prescriptive right has not attached, rests upon the actual intent of the owner of the property. That intention must consist *of acts* or declarations *by the owner which clearly and*

*equivocally indicate his purpose to make a dedication, or conduct which equitably estops him from denying such intention.* Mere user by the public is not enough." (Emphasis added.)

Here the City has established roads and highways leading to the airport buildings, installed parking meters as on other public thoroughfares, enforced its police ordinances throughout the area in question, and left no line of demarcation as to where public thoroughfares end and private ones begin.

In Colorado a dedication of land to public use may be made either according to the common law or pursuant to statute. See *Denver v. Clements,* 3 Colo. 472, at page 479. "Whether there has been a common law dedication is a question of fact, 15 Cal. Jur. 2d 387, and the general rule that the decision of the trial court based on substantial though conflicting evidence is binding on appeal applies." *City of Oakland v. Burns, supra,* at page 274. *Unless prohibited by statute,* an offer, constructive or actual, to dedicate a street can be made by a municipal corporation as well as by a private owner. McQuillin Municipal Corporations, 3rd Edition, Vol. 10, p. 104, and Vol. 11, p. 616. Once the common law dedication occurred the title to the concourse vested in the City in its governmental capacity in trust for the use of the public. See *Denver v. S.F.R.R. Co. v. Domke,* 11 Colo. 247, at 250, 17 Pac. 777, as to the same rule for statutory dedications. '53 C.R.S., 115-9-1 (6), relating to motor vehicle carriers, defines a public highway as "every road or highway over which the public generally has a right to travel."

Here we have a dedication by *acts and conduct of the City.* This is a common law dedication through an estoppel *in pais* and not a statutory dedication requiring a grant. See *City v. Clements, supra,* and *Denver v. Jacobson,* 17 Colo. 497, 500, 30 Pac. 246.

We cannot assume that the City has wrongfully

been arresting persons for violation of its meter and traffic ordinances affecting the airport concourse. We do say, however, that the City cannot treat the area as public and governmental as to some citizens and private and proprietary as to others. This question has nothing to do with the general police powers of a city or state which operate over all public and private property alike. Nor does it relate to the services which the City, as proprietor, owes to the public in the operation of the airport, it having cut off the areas in question from its proprietary airport operation. It is not intended that our holding here extends to the entire area known as Stapleton Field, in its proprietary character, but obviously the concourse, so called, consisting of the streets, highways, approaches, and public parking facilities has lost its private character.

Although under our laws a city may properly designate areas in which street railways or public utilities may operate, it cannot grant an exclusive license to one part of the city's streets to one taxicab company and deny the same to others lawfully operating within its corporate limits. Each class of licenses or permits for particular uses of highways, to be valid, must be general and impartial in their operation. 25 Am. Jur. 555, Sec. 261. Also see *Denver v. Thrailkill,* 125 Colo. 488, 244 P. (2d) 1074, wherein are described the rights of taxicab businesses to due process of law and to the use of city streets.

We hold that the concourse, as delineated by the trial court, has, by the course of action adopted by the City, been dedicated to public use and is a public area and thoroughfare subject only to the City's general police powers.

A fortiori, the City having, by operation of law, surrendered its proprietary control over the concourse, and the area being open to the use of all lawfully-operating taxicabs and limousines, the exclusive revocable "con-

cession grant" created or granted to Yellow Cab was in excess of the City's authority and is void.

The judgment of the trial court is affirmed.

MR. JUSTICE FRANTZ not participating.