The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA18

**No. 17CA0043, Save Cheyenne v City of Colorado Springs — Municipal Law — Real Property — Conveyances — Land Exchange — Home Rule Cities**

In this proceeding, a division of the court of appeals considers whether, in the course of a land exchange, the City of Colorado Springs had the power to convey away a portion of a public park that the City purchased more than a century ago. Because there was no statutory dedication of the park for public use, and any dedication at common law has been abrogated by ordinance, the division concludes that the City had the power to convey the land in question.

Further, because of the City's status as a home rule municipality under the Colorado Constitution, the division rejects appellant's contention that the City had an obligation to hold an

election under state law to approve the conveyance. The division also concludes that the land exchange and resulting conveyance of parkland did not amount to an unconstitutional gift to a private corporation under article XI, section 2 of the Colorado Constitution, and rejects a challenge to the conveyance under sections 10-10 and 10-60 of the Charter of the City of Colorado Springs. Finally, the division concludes that appellant's zoning challenge is unripe.

Accordingly, the division affirms the ruling of the district court.

COLORADO COURT OF APPEALS                                    **2018COA18**

Court of Appeals No. 17CA0043
El Paso County District Court No. 16CV32101
Honorable Michael P. McHenry, Judge

Save Cheyenne, a Colorado non-profit corporation,

Plaintiff-Appellant,

v.

The City of Colorado Springs, Colorado; the City Council of the City of Colorado Springs; John W. Suthers, in his official capacity as the Mayor of the City of Colorado Springs; and Ronn Carlentine, in his official capacity as the Real Estate Services Manager of the City of Colorado Springs,

Defendants-Appellees,

and

Manitou and Pike's Peak Railway Company; COG Land & Development Company; PF, LLC; and Broadmoor Hotel, Inc.,

Intervenors-Appellees.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE TERRY
Webb and Graham, JJ., concur

Announced February 8, 2018

---

Norton & Smith, P.C., Charles E. Norton, Kristin N. Cisowski, Denver, Colorado, for Plaintiff-Appellant

Wynetta P. Massey, City Attorney, Thomas J. Florczak, Assistant City Attorney, Anne H. Turner, Assistant City Attorney, Colorado Springs, Colorado, for Defendants-Appellees

Hogan Lovells US LLP, John W. Cook, Colorado Springs, Colorado; Hogan Lovells US LLP, Mark D. Gibson, Denver, Colorado; Hogan Lovells US LLP, Catherine E. Stetson, Washington, D.C., for Intervenors-Appellees

Murray Dahl Kuechenmeister & Renaud LLP, Gerald E. Dahl, Lakewood, Colorado, for Amicus Curiae Colorado Municipal League

¶ 1    Does the City of Colorado Springs have the power to convey away a portion of a public park that was purchased by the City and has been used as a park for more than a century?  Under the circumstances of this case, we conclude that the answer to this question is "yes."  The original ordinance creating the park permitted its conveyance and did not effect a statutory dedication of the park for public use.  Any dedication of the park at common law was abrogated by the ordinance.  And, as a home rule municipality, the City had no obligation to hold an election under a state statute before conveying the land.  We also reject challenges to the conveyance under sections 10-10 and 10-60 of the Charter of the City of Colorado Springs, and conclude that the zoning challenge of plaintiff, Save Cheyenne, is unripe.  We therefore affirm the district court's judgment dismissing the complaint against the above-captioned defendants and intervenors.

## I.  Background

¶ 2    The parties' dispute concerns a Colorado Springs City Council resolution approving a land exchange between the City, on the one hand, and the Broadmoor Hotel, Inc.; the Manitou and Pike's Peak Railway Company; the COG Land & Development Company; and

1

PF, LLC (collectively, the Broadmoor), on the other hand. The most notable feature of the land exchange concerns a 189.5-acre parcel within Cheyenne Park. The parcel, known locally as "Strawberry Fields," was transferred to the Broadmoor for the construction of a private equestrian center on an 8.5-acre building envelope within the parcel. As a condition of the transfer, the Broadmoor is required to allow continued public access to Strawberry Fields, with the exception of land within the building envelope.

¶ 3 In exchange for the City's conveyance of Strawberry Fields and a City-owned parking lot, the Broadmoor transferred to the City more than 300 acres of land and trail easements, which are to be added to the City's park system.

¶ 4 Plaintiff, a local non-profit corporation, filed suit, seeking (1) a declaration that the resolution authorizing the exchange is null and void and (2) injunctive relief preventing the land exchange. It also alleged a zoning violation. The City and the Broadmoor moved to dismiss the complaint under C.R.C.P. 12(b)(5), asserting that plaintiff had failed to state any claims, and under C.R.C.P. 12(b)(1), arguing that the court lacked jurisdiction over the zoning challenge because it was unripe. In a lengthy, thorough, and well-reasoned

2

order, the district court granted the motion and entered judgment against plaintiff.

## II.  Mootness

¶ 5     We begin by rejecting defendants' motion to dismiss plaintiff's appeal based on mootness.  Defendants contend that the case is moot because the land exchange closed shortly after the district court entered judgment, and plaintiff failed to seek a temporary restraining order, preliminary injunction, or stay of the district court's judgment.  We disagree.

¶ 6     A court will generally not render an opinion on the merits of an appeal when issues presented in the litigation become moot because of subsequent events.  *United Air Lines, Inc. v. City & Cty. of Denver*, 973 P.2d 647, 652 (Colo. App. 1998), *aff'd*, 992 P.2d 41 (Colo. 2000).  "A case is moot when a judgment would have no practical effect upon an existing controversy, or would not put an end to any uncertainty."  *Id.*

¶ 7     A judgment against defendants would have a practical effect on the parties' controversy.  If the City Council did not have the power to authorize the land exchange, our ruling would result in a declaration that the resolution and subsequent exchange are null

and void, and thus the transaction could be unwound. *See Centennial Props., Inc. v. City of Littleton*, 154 Colo. 191, 205-06, 390 P.2d 471, 478 (1964) (voiding a property transfer where a city lacked the power to enter into such an agreement); *cf. Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 815 (9th Cir. 1999) (A property transaction may be voided where necessary, and "[w]here the actions involved in a title transfer can be undone, [a] court will not find meritorious the defense of mootness.").

¶ 8　　We are not persuaded by the City's argument that, because plaintiff did not seek a temporary restraining order, preliminary injunction, or stay of the district court's judgment, plaintiff is precluded from obtaining the relief it seeks in this action. *See, e.g., Zoning Bd. of Adjustment v. DeVilbiss*, 729 P.2d 353, 359 (Colo. 1986) (the fact that the plaintiff failed to seek preliminary injunctive relief or a stay of the court's judgment factored into an analysis of whether a zoning variance challenge was moot); *Putnam v. Fortenberry*, 589 N.W.2d 838, 844 (Neb. 1999) (case was moot because a declaratory judgment could not undo the already-completed sale of a hospital).

¶ 9     Plaintiff filed a notice of lis pendens in accordance with section 38-35-110, C.R.S. 2017.  That filing is, as the statute provides, sufficient to give "notice to any person thereafter acquiring, by, through, or under any party named in such notice, [that] an interest in the real property described in the notice . . . [might] be affected by the action described in the notice." § 38-35-110(1); *see Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 76 (notice of lis pendens remains in effect while an appeal affecting interests in the described property is pending).  Therefore, the filing of the lis pendens is sufficient to preserve plaintiff's rights while the appeal is pending.

¶ 10    Defendants' reliance on the mootness analysis in *DeVilbiss*, 729 P.2d at 358-60, is unavailing.  The supreme court specifically limited its holding to "the particular facts of [that] case," *id.* at 360, and the facts here are dissimilar from those that drove the supreme court's ruling.  There, an appellate ruling in favor of the plaintiff would have required the destruction of a fifty-five-foot-tall, $7.7 million coal loading facility that already employed 250 people.  *Id.* at 354-55, 360.  The prospect of such destruction was an important factor in the supreme court's mootness analysis.  *Id.* at 358-60.  No

5

such concerns are present here.  We therefore proceed to consider the merits of the appeal.

### III.  C.R.C.P. 12(b)(5) Dismissal of Claims

#### A.  Standard of Review

¶ 11    A C.R.C.P. 12(b)(5) motion to dismiss tests the sufficiency of the complaint.  In assessing a motion under that rule, a court must accept all matters of material fact in the complaint as true and view the allegations in the light most favorable to the plaintiff.  *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004).  Such a motion should only be granted when the plaintiff's factual allegations cannot support a claim as a matter of law.  *Id.*

¶ 12    We review de novo the district court's order dismissing under C.R.C.P. 12(b)(5) plaintiff's claims for violation of a dedication of the land for park use, violation of the city charter, violation of a state statute, and violation of the Colorado Constitution.  *State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1065 (Colo. App. 2008).

#### B.  Statutory or Common Law Dedication

¶ 13    Plaintiff first contends that the resolution authorizing the land exchange was an ultra vires act of the City Council because Cheyenne Park had previously been dedicated as a public park.

According to plaintiff, the dedication was effectuated either by statute or by operation of the common law. Plaintiff argues that, as a consequence of the alleged dedication, the City holds the park in trust for the public and cannot convey the land within the park. We are not persuaded.

¶ 14    Once a common law or statutory dedication occurs, title vests in the government body "in its governmental capacity in trust for the use of the public." *City & Cty. of Denver v. Publix Cab Co.*, 135 Colo. 132, 139, 308 P.2d 1016, 1020 (1957); *Denver & S.F.R. Co. v. Domke*, 11 Colo. 247, 250, 17 P. 777, 778 (1888).

¶ 15    Though the complaint alleges that "Strawberry Fields cannot be alienated in any fashion," it is unclear based on the law of Colorado whether a common law or statutory dedication could theoretically bar a municipality from conveying the land so dedicated. *Compare Publix Cab Co.*, 135 Colo. at 139, 308 P.2d at 1020 (holding that "[o]nce [a] common law dedication occurred[,] the title to the [airport's] concourse vested in the City in its governmental capacity in trust for the use of the public," but not discussing rights to alienate such property), *and McIntyre v. Bd. of Comm'rs*, 15 Colo. App. 78, 84, 61 P. 237, 239 (1900) (stating that,

7

where a parcel was dedicated to public use, the City of Colorado Springs could not "alienate the ground"), *with* § 31-15-713(1)(a), C.R.S. 2017 (providing that municipalities have power to "sell and dispose of . . . real property used or held for park purposes" after approval in an election), *and City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶ 62 (rejecting a claim that the state must hold natural resources in trust for the people because "we [have not] seen . . . any applicable Colorado case law adopting the public trust doctrine in this state").

¶ 16 Even assuming that such a bar on alienation might exist, we conclude that no valid statutory dedication of Cheyenne Park occurred, and that any common law dedication was abrogated.

## C. Creation of Cheyenne Park

¶ 17 On August 21, 1885, the Colorado Springs City Council passed an ordinance appropriating funds for the acquisition of what would become Cheyenne Park, Col. Springs, Col., Ordinance (Aug. 21, 1885), and the City then acquired the site by warranty deed. The City Council passed an additional ordinance on October 5, 1885, titled "Relating to and for the government of public parks," which gave the legal description of the park and said that "[t]he

8

property above named is hereby dedicated as a public park . . . known as and called Cheyenne park." Col. Springs, Col., Ordinance Relating to and for the Government of Public Parks pmbl. & § 1 (Oct. 5, 1885).

### D. Interpretation of Statutes and Ordinances

¶ 18    We use the same rules of construction to interpret state statutes and local ordinances. *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo. App. 2009).

¶ 19    In interpreting a statute or ordinance, our primary goals are to discern and give effect to the drafters' intent. *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15 (discussing statutory interpretation). We look first to the language of the statute or ordinance, giving the words and phrases used therein their plain and ordinary meanings. *See id.* We read the language in the dual contexts of the statute or ordinance as a whole and any comprehensive legislative scheme, giving consistent, harmonious, and sensible effect to all of the language in the statute or ordinance. *See id.* After doing this, if we determine that the statute or ordinance is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. *See id.*

## E. No Statutory Dedication

¶ 20    Statutory dedication of land is accomplished by dedicating land for a particular use in compliance with a statute. *See City of Leadville v. Coronado Mining Co.*, 37 Colo. 234, 240-41, 86 P. 1034, 1036 (1906).

¶ 21    Plaintiff contends that the City effected a statutory dedication of Cheyenne Park in accordance with section 19 of the Act of April 10, 1885, 1885 Colo. Sess. Laws 379-80. That statute provides authority for any incorporated city to purchase land to be used as a public park. But nothing in that statute addresses any "statutory dedication."

¶ 22    In contrast, the April 4, 1877, dedication statute specified that parks had to be designated for public use "on the map or plat of any city or town," and the map or plat had to be filed with the clerk and recorder for both the affected city and county. An Act in Relation to Municipal Corporations, ch. 100, §§ 2647, 2648, 1877 Colo. Gen. Laws 876. It is undisputed that no such designation of Cheyenne Park was made in accordance with the 1877 statute. Therefore, plaintiff cannot establish that there was a statutory dedication of the land as a park. This is the same defect that caused our

10

supreme court to rule, in *Coronado*, 37 Colo. at 240-41, 246, 86 P. at 1036, 1038, that the statutory dedication of a public street failed because, "to constitute a statutory dedication [under the April 4, 1877, dedication statute,] the requirements of the statute must be complied with." *Cf. State Dep't of Highways v. Town of Silverthorne*, 707 P.2d 1017, 1020 (Colo. App. 1985) (no statutory dedication of a street was effected where the dedication on the plat omitted mention of the street in question).

¶ 23    Because strict compliance with the dedication statute is required, *see Coronado*, 37 Colo. at 240-41, 86 P. at 1036, there was no statutory dedication of Cheyenne Park.

F.  Abrogation of any Common Law Dedication

¶ 24    Whether a common law dedication has occurred is a question of fact involving an examination of whether the unambiguous acts and conduct of the owner demonstrated an unequivocal intent to make a public dedication. *Publix Cab Co.,* 135 Colo. at 139, 308 P.2d at 1019-20; *Silverthorne,* 707 P.2d at 1020.

¶ 25    Because plaintiff alleged in the complaint that a common law dedication occurred, we must accept that allegation of material fact

as true, solely for the purpose of reviewing the district court's dismissal of the case. *See BRW*, 99 P.3d at 71.

¶ 26    But the October 5, 1885, ordinance that created Cheyenne Park represents an exercise of the City's power to abrogate any common law dedication of the park that might have occurred. *See Friends of Denver Parks, Inc. v. City & Cty. of Denver*, 2013 COA 177, ¶ 44. The ordinance also contradicts plaintiff's claim that Colorado Springs effected a statutory dedication of the park. The ordinance gave the City Council the power to convey all or any portion of the park.

¶ 27    Section 1 of the ordinance created Cheyenne Park by proclaiming that the land described in the ordinance was "hereby dedicated as a public park." Ordinance for the Government of Public Parks § 1.

¶ 28    Most relevant to our analysis, section 4 says:

> The defacing or injuring of any of the buildings, bridges or other property of said city of whatsoever name or description within any of the said parks, is hereby prohibited; *provided always, that the City Council may direct any act or thing to be done concerning said parks, which they may deem best for improvement of said parks.*

12

*Id.* § 4 (emphasis added).

¶ 29    Plaintiff points to the language preceding "provided always." According to plaintiff's reading, section 4 means only that, while "it was a prohibited offense to damage a fixture within the park, the City Council retained the authority to demolish or construct such improvements." Given the specific language of section 4, taken together with the language of the ordinance as a whole, we reject this argument.

¶ 30    If the drafters had intended the phrase beginning with "provided always" to allow only the modification of buildings, bridges, and other property within a park, then the ordinance would have specifically included such a restriction. Instead, the provision's broad language indicates the intent to grant expansive power to the City Council to take any action the council deems best for the improvement of the park system.

¶ 31    Plaintiff also argues that to read this provision as giving the City a broader power to convey Cheyenne Park would make section 1, which created Cheyenne Park, superfluous. But the ordinance, entitled "Relating to and for the government of public parks," does not just govern Cheyenne Park; it covers other city parks, as well.

Various sections of the ordinance reference conduct that is prohibited "within any of the parks belonging to" the City. *See, e.g.*, *id.* §§ 2, 3, 8, 9, 10.

¶ 32 Therefore, we conclude that a logical reading of the "provided always" clause in section 4 gives the City Council discretion to take *any* action it might deem best for the park system in general, as well as for the benefit of any given park. Such discretion would include the land exchange at issue in this case.

¶ 33 Here, as did the plaintiffs in *Wetter v. City of Indianapolis*, 226 N.E.2d 886 (Ind. 1967), plaintiff places undue emphasis on the language "dedicating" the park. The Indiana Supreme Court deftly explained why such dedication language was not dispositive:

> Appellants emphasize the word "dedicated." It does not, in our judgment, have by necessary implication the legal significance of "irrevocable" and "in perpetuity." Generally speaking, we "dedicate" a bridge, park, public auditorium or other governmental works to the purpose for which they were constructed. Yet this does not mean that they are placed irrevocably and in perpetuity to such purpose and use and that the state has lost control thereafter to alter such use as time and change require.

*Id.* at 888-89.

¶ 34 Given plaintiff's view here that a common law dedication would not permit anything to be done that would contradict the dedication, such as conveyance of the parkland so dedicated, section 4 abrogates by clear implication any putative common law dedication that might preclude conveyance of the parkland. *See Friends of Denver Parks*, ¶ 44 (a local legislative body may modify or abrogate common law, as long as the legislative body manifests its intent to abrogate the common law "either expressly or by clear implication" (quoting *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo. 2004))).

## G. Distinguishing *McIntyre*

¶ 35 According to plaintiff, it is not "sensible" to read section 4 "as abrogating the restrictions in *McIntyre* against the alienation of a public park." In *McIntyre,* another division of this court held that the City of Colorado Springs could not convey parkland to the county for use as a courthouse, because the land had been dedicated by a third party to the City for use as a public park. 15 Colo. App. at 84-88, 61 P. at 239-41. The division reasoned that the construction of a courthouse was inconsistent with the use for which the land had originally been dedicated. *Id.*

¶ 36    We are not bound by the prior division's ruling in *McIntyre*. *See City of Steamboat Springs v. Johnson*, 252 P.3d 1142, 1147 (Colo. App. 2010). In any event, that case is inapplicable to the land exchange here.

¶ 37    *McIntyre* involved a grant from a private party to the City of land that was set apart for use as public parkland. 15 Colo. App. at 80, 61 P. at 238. But here, the land for Cheyenne Park was purchased outright by the City. In *McIntyre*, the parties conceded that there was either a statutory or common law dedication to public use of the disputed parkland. *Id.* at 84, 61 P. at 239. In contrast, here (1) there was never a statutory dedication of Cheyenne Park and (2) any putative common law dedication that might have been made as to Cheyenne Park was abrogated by the October 5, 1885, ordinance.

## H.  Power to Convey Parkland

¶ 38    Because the October 5, 1885, ordinance creating Cheyenne Park abrogated any common law restrictions on conveyances, and there was no statutory dedication of the parkland, we conclude that the City Council had the power to convey Strawberry Fields when it authorized the land exchange.

## I. Conflict Between City's Home Rule Status and Statute Requiring Public Election

¶ 39    Plaintiff next contends that, under section 31-15-713(1)(a), no conveyance of the parkland could be made unless it was authorized by a vote in a public election.  We disagree.

¶ 40    The Colorado Constitution designates Colorado Springs as a home rule city in article XX, section 6, which provides, in part, "[a]ll provisions of the charter[] of the city . . . of . . . Colorado Springs . . . , which provisions are not in conflict with this article, . . . are hereby ratified, affirmed and validated as of their date."

¶ 41    That section of the constitution recognizes the sovereignty of Colorado Springs as a home rule city, *see City of Longmont*, ¶ 16, by providing that a home rule city's charter and local ordinances "supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith."  Colo. Const. art. XX, § 6.  Therefore, "in matters of local concern, a home-rule ordinance supersedes a conflicting state statute."  *City of Longmont*, ¶ 17.

¶ 42    The state statute in question here, section 31-15-713(1)(a), provides that a municipality has the power to "sell and dispose of

17

. . . real property used or held for park purposes," but that "[b]efore any such sale is made, the question of said sale and the terms and consideration thereof shall be submitted at a regular or special election." For purposes of considering plaintiff's argument, we will construe the land exchange transaction as a sale.

¶ 43 But the statute runs headlong into section 7.7.1803 of the Colorado Springs City Code. The code requires that when acquiring or disposing of real property interests, the City "shall follow the procedures set forth" in the City's Real Property Procedure Manual. Contradicting the election requirement in the state statute, the manual says that "'land exchanges' must be reviewed by City Council and approved by resolution."

¶ 44 The two provisions cannot be reconciled. So which applies?

¶ 45 "[T]he General Assembly has no power to enact any law that denies a right specifically granted by the Colorado Constitution." *City of Thornton v. Farmers Reservoir & Irrigation Co.*, 194 Colo. 526, 535, 575 P.2d 382, 389 (1978).

¶ 46 Section 1 of article XX, as made applicable to the City by section 6, allows the City to "purchase, receive, hold, and enjoy or sell and dispose of, real . . . property," without any stipulation for

18

holding an election before it can do so. Colo. Const. art. XX, § 1; *id.* § 6 (cities including Colorado Springs "shall have the powers set out in section[] 1 . . . of this article").

¶ 47     Because the City has adopted specific procedures for purchasing and disposing of real estate to exercise its rights under article XX, and the constitution designates the City as a home rule city, the city code provision supersedes the conflicting state statute requiring an election before a city can dispose of park property — a type of real property. *See also* § 31-1-102(1), C.R.S. 2017 ("[I]t is the intent of the general assembly that the provisions of this title shall apply to home rule municipalities except insofar as superseded by charter or ordinance passed pursuant to such charter . . . ."); *Town of Telluride v. San Miguel Valley Corp.*, 185 P.3d 161, 168-69 (Colo. 2008) (noting that the Colorado Supreme Court has "recognize[d] that land use policy traditionally has been a local government function," and "that municipalities, neighboring counties, and the state have traditionally acted on the presumption that land planning for open space and parks is a local government function").

¶ 48    Because the constitution specifically grants these powers to home rule cities, we need not determine whether this is an issue of statewide concern.  *Cf. City of Longmont*, ¶¶ 18-20 (setting forth factors to be used to determine whether an issue is a matter of statewide concern for purposes of home rule preemption).

¶ 49    Thus, the City's code provision applies, and the City was not required to hold an election before making the land transfer.

### J.  Article XI, Section 2 of the Colorado Constitution

¶ 50    We next consider and reject plaintiff's argument that the resolution and resulting land exchange violate article XI, section 2 of the Colorado Constitution, which prohibits a city from making "any donation or grant to, or in aid of . . . any corporation or company or a joint owner with any person, company, or corporation."

¶ 51    "The purpose of [article XI, section 2] is to prohibit a municipality from transferring public funds to a private company or corporation without receiving *any* consideration in return."  *City of Aurora v. Pub. Utils. Comm'n*, 785 P.2d 1280, 1288 (Colo. 1990) (emphasis added).  Consequently, any transfer of city property without consideration is prohibited.  *Id.*  While plaintiff may dispute

20

the value of the land that Colorado Springs received in return for Strawberry Fields, there is no doubt — even construing all of the allegations in plaintiff's complaint as true — that the City received at least some consideration.

¶ 52    Plaintiff relies on *Tamblyn v. City & County of Denver*, 118 Colo. 191, 195-96, 194 P.2d 299, 301 (1948), to argue that an article XI, section 2 violation arises if the value of the city property conveyed greatly exceeds the sales price.  In that case, the supreme court concluded that the district court erred in granting summary judgment because there were issues of material fact that required a trial.  In passing, the court said:

> *If, for instance, on trial of the cause,* it shall appear that the property does not greatly exceed in value the price fixed in the contract, courts have no right, under the above authorities, to interfere; on the other hand, *if the property greatly exceeds in value the contract price, or is worth, as alleged, in excess of two million dollars, it follows that the officers of the city* not only have abused their discretion, but also, if the sale is consummated, *will have made a gift* to 3978 Corporation of $1,181,400, *contrary to, and in violation of, section 2, article XI, of the state Constitution.*

*Id.* (emphasis added).

¶ 53    This language from *Tamblyn* is dictum, as it appears to be an example of what *might* be shown if the case were to proceed to trial. The *Tamblyn* court had already decided the issue on appeal — namely, that summary judgment was improperly granted. Therefore, the court's gratuitous comment about article XI, section 2 is not binding and need not be followed as precedent. *See Griffith v. SSC Pueblo Belmont Operating Co.*, 2016 CO 60M, ¶ 12 & n.3 (obiter dictum from a Colorado Supreme Court decision is not to be followed as precedent).

¶ 54    Moreover, *Tamblyn* conflicts with the supreme court's more recent decision in *City of Aurora*, which indicated that *any* consideration is sufficient. *City of Aurora*, 785 P.2d at 1288. The court in *City of Aurora* said that "[t]he term 'donation' obviously means a gift — that is, a voluntary transfer of property to another without consideration." *Id.*

¶ 55    To the extent that the *City of Aurora* analysis conflicts with *Tamblyn*, the later supreme court case impliedly overruled *Tamblyn*.

¶ 56    Because the City received consideration for the exchange, we conclude that the resolution and land exchange do not violate article XI, section 2. *See City of Aurora*, 785 P.2d at 1288; *see also*

*In re Interrogatory Propounded by Governor Roy Romer on House Bill 91S–1005*, 814 P.2d 875, 882 (Colo. 1991) ("[A]rticle XI, section 2 of the Colorado Constitution does not prohibit a municipality from conferring a monetary benefit on a private company in consideration of the company's undertaking a project . . . *as long as the expenditure by a municipality furthers a valid public purpose.*" (quoting *City of Aurora*, 785 P.2d at 1289)).

### K.  Sections 10-10 and 10-60 of the City Charter

¶ 57     Plaintiff next contends that the City Council's resolution approving the land exchange violates sections 10-10 and 10-60 of the Charter of the City of Colorado Springs, which limit the granting of leases and franchises on city parks.  We disagree.

¶ 58     Section 10-10 of the city charter defines a "franchise" as a "special right or privilege granted by vote of the electorate of the City of Colorado Springs to any person, firm, or corporation to erect, construct, operate, carry on, or maintain . . . business activity affective of the public interest which permanently occupies and obstructs the public streets, rights-of-way, alleys, or properties . . . ."  Section 10-60 provides that for city-owned parklands, "the

term of a franchise, lease, or right to use shall never exceed twenty-five (25) years."

¶ 59 The plain terms of sections 10-10 and 10-60 indicate that they only regulate granting franchises and leases on public property and city-owned parklands. The transaction here did not create a lease or franchise on property owned by the City. Instead, the City conveyed ownership of Strawberry Fields to the Broadmoor as part of the land exchange, and that land ceased to be public property. Thus, these city charter provisions do not apply to the conveyance.

IV. C.R.C.P. 12(b)(1) Dismissal of Zoning Challenge

¶ 60 Finally, we conclude that plaintiff's claim of zoning violations resulting from the land exchange is not yet ripe for review, and that the district court therefore properly dismissed that claim under C.R.C.P. 12(b)(1).

¶ 61 We apply a mixed standard of review to a district court's dismissal of a claim under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction. *Auxier v. McDonald*, 2015 COA 50, ¶ 9. We review factual findings for clear error and legal conclusions de novo. *Id.*

¶ 62   Plaintiff references the Broadmoor's acquisition of an 8.5-acre building envelope in Strawberry Fields, which it can potentially use to exclude the public. According to plaintiff, such a potential use is incompatible with the requirement in the City Council's resolution that all uses within Strawberry Fields must be compatible with the City's PK zoning.

¶ 63   "The doctrine of ripeness recognizes that courts will not consider uncertain or contingent future matters because the injury is speculative and may never occur." *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo. App. 2006). Plaintiff does not point to anywhere in the record demonstrating that a final zoning decision has been made regarding the permitted uses of Strawberry Fields. Nor does plaintiff allege that a zoning violation currently exists on the property. Therefore, we conclude that the issue of zoning is unripe. *See G & A Land, LLC v. City of Brighton*, 233 P.3d 701, 711-12 (Colo. App. 2010) (noting that ripeness is a concern in zoning and land use cases because the "final zoning or land use regulations may not adversely affect a landowner, or the impact may be mild because a waiver or variance is granted or changes

favorable to the landowner [may be] made during the adoption process").

## V. Conclusion

¶ 64    The judgment is affirmed.

JUDGE WEBB and JUDGE GRAHAM concur.