586 P.2d 238 (1978)
In the Matter of the ESTATE of Hazel Taylor BARNES, a/k/a Hazel Barnes, Deceased.
Thomas Clay TAYLOR and Robert Lane Taylor, as Executors and Individually, Proponents-Appellants,
v.
L. E. BARNES, Caveator-Appellee.
No. 77-466.
Colorado Court of Appeals, Div. III.
August 3, 1978.
Rehearing Denied August 31, 1978.
Certiorari Denied November 13, 1978.
*239 Roath & Brega, P. C., Charles F. Brega, Robert E. Kendig, Denver, for proponents-appellants (Individually).
Zuspann & Zuspann, Eugene P. Zuspann, II, Denver, for proponents-appellants (Co-Executors).
Lefferdink, Legg & Lefferdink, John J. Lefferdink, Lamar, for caveator-appellee.
KELLY, Judge.
Thomas Clay Taylor and Robert Lane Taylor, as executors of the estate of Hazel Taylor Barnes, and as individuals, appeal the judgment of the trial court allowing the testatrix' surviving spouse, L. E. Barnes, to elect his statutory share of her estate. By an antenuptial agreement entered into between the Barneses 26 years before Hazel Barnes' death, each party had waived his or her right to elect a statutory share of the other's separate estate, and the Taylors contend, among other things, that there is no competent evidence to support the trial court's finding that that agreement had been rescinded. We agree and reverse.
Shortly before their marriage in 1948, Hazel and L. E. Barnes entered into an antenuptial agreement which identified the separate property owned by each. Under its terms each of them waived the right to elect a statutory share of the separate property of the other, but each retained the right to elect a share of jointly-accumulated property. The agreement recited that each party reserved the right to give to the other any separate property inter vivos or by testamentary disposition.
In 1970, Hazel and L. E. entered into a contract for mutual wills. The contract provided that Hazel would execute a will leaving all her separate real property in Lamar, Colorado, to L. E. Barnes. L. E. agreed to execute a will leaving the same real property to Hazel's sons, the Taylors. Hazel executed a will complying with the contract, and when she died, the will was admitted to probate. As her surviving spouse, L. E. Barnes filed a petition seeking to elect a statutory share of her estate rather than take under the provisions of her will. The Taylors, as executors, opposed Barnes' petition, contending that by entering into the antenuptial agreement he had waived his right to elect a statutory share.
On the day of trial, Barnes argued that the Taylors, as individuals, were devisees under the will and should defend in that capacity. The trial court agreed that the Taylors, as individuals, were indispensable parties and because, as individuals, they did not receive the notice to which they were entitled, the court informed the parties of its intent to vacate the trial. However, following a short recess, the Taylors informed the court that, as individuals, they would waive their right to notice, would adopt the pleadings filed by themselves as executors, and would waive their right to counsel. As a result, the case was tried with the Taylors appearing as executors and as individual devisees.
L. E. Barnes testified in his own behalf, but before he could develop his theory that he and the testatrix had mutually rescinded the antenuptial agreement, the attorney for the executors objected that Barnes' testimony was barred by the Dead Man's Statute, § 13-90-102, C.R.S.1973. The trial court overruled the objection and Barnes proceeded to testify about the manner in which he and Hazel organized and conducted their business. It was after he was challenged as a witness that Barnes testified to conversations with Hazel which tended to prove that the antenuptial agreement had been rescinded. Barnes was the only witness who testified about any rescission of the antenuptial agreement.
At the end of the trial, the court concluded that it had erroneously admitted Barnes' testimony and stated it had not considered the same in arriving at its findings of fact. The court ruled that the antenuptial agreement entered into between Hazel and L. E. Barnes had been revoked by mutual agreement of the parties and that, therefore, L. E. Barnes, was not barred from electing a statutory share.
From this judgment, the executors filed a timely motion for a new trial, accompanied *240 by a memorandum brief. However, the Taylors, as individuals, did not file a motion for new trial within the 10-day period prescribed by C.R.C.P. 59, and when it was filed, it was filed pro se and was not accompanied by a memorandum brief. The trial court granted Barnes' motion to strike the Taylors' motion for a new trial, and denied the executors' motion for a new trial on its merits.

I.
Initially, we reject Barnes' contention that the failure of the Taylors, individually, to file a timely motion for new trial requires that we dismiss their appeal. Citing Risbry v. Swan, 124 Colo. 567, 239 P.2d 600 (1951), and Wilson v. Board of Regents, 46 Colo. 100, 102 P. 1088 (1909), Barnes argues this result is required because the Taylors, as executors, have no standing to appeal. In view of the dual capacity in which the Taylors participated in this case, dismissing their appeal would "subordinate substance to shadow," a course condemned in a similar situation in Cunningham v. Stender, 127 Colo. 293, 255 P.2d 977 (1953). Here, the trial court denied the executors' motion for a new trial, and, as that motion contained essentially the same points raised by the Taylors as individuals, the purpose of the rule was fulfilled. See City of Leadville v. McDonald, 67 Colo. 131, 186 P. 715 (1919).

II.
We reject Barnes' contention that, because the objection to his competency was not raised by a party having standing, this question was not properly preserved. Although the executors lacked standing to raise the Dead Man's Statute, see Risbry v. Swan, supra, the Taylors, as individuals, were devisees under the testatrix' will and, in that capacity, could raise the bar of the Dead Man's Statute. See In re Estate of Abbott, Colo.App., 571 P.2d 311 (1977).
The Dead Man's Statute, § 13-90-102(1), C.R.S.1973, provides, in part:
"No party to any civil action, suit, or proceeding, or person directly interested in the event thereof shall be allowed to testify therein of his own motion or in his own behalf . . . when any adverse party sues or defends . . . as the executor or administrator, heir, legatee, or devisee of any deceased person . . ."
Although the trial court initially overruled the objection to Barnes' competency as a witness, it later recognized that the testimony should not have been admitted, but stated that it had not considered his testimony in its findings of fact. However, the trial court's findings are replete with facts testified to by Barnes after the objection was made, and it is clear that the trial court excluded from its consideration only evidence of one conversation between the testatrix and Barnes.
Once the objection to Barnes' competency was made, all of his subsequent testimony should have been excluded. Lego v. Olson, 110 Colo. 508, 136 P.2d 277 (1943); Carpenter v. Ware, 4 Colo.App. 458, 36 P. 298 (1894). Except for its interpretation of certain documents, all of the factors relied on by the trial court in finding that the antenuptial agreement had been revoked were testified to by Barnes after his competency was challenged. Once challenged, all of his testimony was inadmissible since none of the statutory exceptions are applicable here. Without Barnes' testimony, the record is devoid of evidence to support the trial court's finding.
The trial court also based its ruling on its finding that a general power of attorney given to L. E. Barnes by Hazel Barnes and the contract for mutual wills were inconsistent with the antenuptial agreement. We disagree, and since the evidence consists of documents, we are not bound by the trial court's findings relating to them. Sentinel Acceptance Corp. v. Colgate, 162 Colo. 64, 424 P.2d 380 (1967); Burks v. Verschuur, 35 Colo.App. 121, 532 P.2d 757 (1975).
If the intent to do so is unambiguous, a document may by implication revoke an earlier one without expressly referring to it. In re Estate of Lehmer, 144 Colo. 477, 357 P.2d 89 (1960). Here, the documents do not indicate such an intent.
*241 The antenuptial agreement recognized that the parties could dispose of their separate property in any manner they desired, including devising it to the other spouse. The contract to make mutual wills involved the testatrix' separate property, and by entering into the contract, she did nothing more than that which the antenuptial agreement recognized she might do.
Additionally, the power of attorney given to L. E. Barnes by the testatrix shortly after the contract for mutual wills was entered into does not per se indicate that either of the parties intended that the antenuptial agreement would be rescinded. Rather, the power of attorney, which terminates on the death of the grantor, Restatement, Agency (2d ed.) § 120, is wholly compatible with the provision of the antenuptial agreement which reserved the right to make inter vivos gifts. Nor did the power of attorney grant any right or authority to perform any acts after the death of the grantor. The contract for mutual wills, the testatrix' will, and the power of attorney do not refer to the antenuptial agreement, and they do not by necessity revoke it.
Because of our disposition of the Taylors' appeal we do not reach Barnes' contention that the trial court erred in refusing to order the executors to convey certain real property to him during the pendency of this appeal. Barnes, in the antenuptial agreement, waived his right to elect a statutory share in Hazel's separate property, and the antenuptial agreement was not rescinded. Therefore, whatever rights Barnes has in the testatrix' separate property are those given to him by her will.
The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
PIERCE and SMITH, JJ., concur.