The ZONING BOARD OF ADJUSTMENT OF GARFIELD COUNTY, Colorado; Peter M. Cabrinha, Mary F. Odell, John W. Tripp, Marvin H. Wambolt, and Allan Bowles, All In Their Capacity As The Individual Members of The Zoning Board of Adjustment of Garfield County, Colorado; The Board of County Commissioners of Garfield County, Colorado; W.C. Milner, As Building Official of Garfield County, Colorado; Snowmass Coal Company, a General Partnership; and The Anschutz Corporation, a Kansas Corporation, Petitioners,

v.

J.E. DeVILBISS, Respondent.

No. 84SC318.

Supreme Court of Colorado, En Banc.

Dec. 8, 1986.

Davis, Graham & Stubbs, Richard P. Holme, Denver, Charles H. Willman, Glenwood Springs, for petitioner Snowmass Coal Co.

Holme Roberts & Owen, Lawrence L. Levin, Denver, for petitioner The Anschutz Corp.

Earl G. Rhodes, Grand Junction, Steven J. Zwick, Glenwood Springs, for all other petitioners.

Gerald D. Hartert, Glenwood Springs, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *DeVilbiss v. Zoning Board of Adjustment*, 690 P.2d 260 (Colo.App.1984), which held that the failure of a plaintiff to seek temporary or preliminary injunctive relief in connection with a C.R.C.P. 106 challenge to a zoning

variance, which authorized the construction of a coal-loading facility, did not render moot a claim for a permanent injunction against the construction of the facility notwithstanding the fact that the facility itself had been completed prior to any final resolution of the C.R.C.P. 106 action. We conclude that, under the circumstances of this case, the claim for permanent injunctive relief is moot, and we accordingly reverse the judgment of the court of appeals.

## I.

In April 1980 the Snowmass Coal Company applied to the Board of County Commissioners of Garfield County for a special use permit to enable it to construct a coal-loading facility fifty-five feet in height in an area in which zoning restrictions limited all structures to twenty-five feet in height. J.E. DeVilbiss, a Garfield County landowner within the same zoning district as the loading facility, appeared at the hearing to oppose the application. The Board of County Commissioners granted the special use permit contingent upon approval of a height variance by the Board of Adjustment of Garfield County. On May 29, 1980, the Board of Adjustment held a public hearing on Snowmass Coal Company's application for height variance and granted the variance for the following reasons:

(a) by reason of an extraordinary and exceptional situation or condition of such piece of property, the strict application of the zoning resolution would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property;

(b) the variance granted is the minimum necessary to alleviate such practical difficulties or undue hardship upon the owner of said property;

(c) such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the general plan or the zoning resolution;

(d) the circumstances found to constitute a hardship were not caused by the applicant, are not due to or the result of general conditions in the district, and cannot be practically corrected.

The resolution expressly provided that the loading facility with a loadout structure "shall not exceed 55 feet in height above the ground" and with a conveyor "shall not exceed 70 feet in height above the ground or the Roaring Fork River."

On June 27, 1980, DeVilbiss filed a complaint in the district court seeking relief under C.R.C.P. 106(a)(4).[1] He challenged the action of the Zoning Board of Adjustment as arbitrary, capricious, and in excess of its jurisdiction. Named as defendants in the complaint were the Board of Adjustment, the individual members of the Board of Adjustment, the Board of County Commissioners of Garfield County, the Building Official of Garfield County, the Snowmass Coal Company, and the Anschutz Corporation.[2] DeVilbiss sought the following re-

---

**1.** In 1980, when DeVilbiss filed his complaint, C.R.C.P. 106(a)(4) provided in pertinent part as follows:

In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:

\* \* \*

(4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy. Upon the filing of the complaint the court shall direct the issuance of a citation to the inferior tribunal to show cause why the relief requested shall not be allowed. If the complaint is supported by an affidavit the order to show cause may be issued, or the court may forthwith order the inferior tribunal, or any person having custody of the records of the proceedings described in the complaint, to certify to the court at a specified time and place a transcript of the record and proceedings, or such portion thereof as the court may direct. If a stay of proceedings is granted the citation or order shall so state. Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion.

**2.** The record does not disclose the interest of Anschutz Corporation in this matter. According to the affidavit of James K. Greenlee, vice president of engineering and technical services of Roaring Fork Coal Corporation, submitted in support of the motion for summary judgment,

lief: (1) an order compelling the Board of Adjustment to certify to the court a record of the proceedings leading to the adoption of the variance resolution and directing the Board to show cause why the resolution should not be declared void; (2) an order enjoining the Snowmass Coal Company from constructing the facility; and (3) an order enjoining the Board of County Commissioners and the Garfield County Building Official from issuing any permits in connection with the construction of the facility. DeVilbiss did not seek a temporary restraining order or a preliminary injunction under C.R.C.P. 65, nor did he request a stay under C.R.C.P. 106(a)(4) of the Board of Adjustment's height variance and the issuance of building permits by the building official.

In July and September of 1980, shortly after the action was filed in the district court, the Snowmass Coal Company received the requisite permits for the construction of the facility from the Garfield County Building Official, the Colorado Mined Land Reclamation Board, and the Colorado Air Pollution Control Board. Snowmass Coal Company proceeded with the construction of the facility, completing the facility and placing it in operation by October 1, 1981, after an expenditure of more than $7.7 million.

In September, 1982, the defendants filed a motion to dismiss DeVilbiss's complaint on the basis that the completion of the facility rendered the case moot. The defendants requested the court to treat the motion as one for summary judgment pursuant to C.R.C.P. 12(c).[3] In support of the motion, the defendants filed the affidavit of James K. Greenlee, the vice president of a company which owned a fifty percent partnership interest in Snowmass Coal Company. The affidavit described the purposes of the coal-loading facility, summarized the efforts of Snowmass Coal Company in ob-

taining a height variance and other permits for the construction of the facility, and then concluded:

Following the issuance of the foregoing permits, Snowmass Coal commenced and proceeded with the construction of the coal load out facility and its various component parts. Construction of the entire facility, including the train-loading silo, the truck dump, the conveyor structure, the railroad sidings, and the ancillary buildings, structures, holding ponds and extensive landscaping was completed by September 1981.

Commencing on approximately October 1, 1981, Snowmass Coal placed the coal train loading facility into regular operation. Through August 31, 1982, Snowmass Coal has loaded approximately 187,000 tons of coal onto twenty-six coal trains comprised of 40–84 cars each.

\* \* \*

Snowmass Coal expended more than $7.7 million in order to erect and complete construction of the entire coal load out facility.

Following completion of the coal load out facility, Snowmass Coal has employed as many as two hundred and fifty employees in the operation of the facility and the mine which provides the coal to that facility.

DeVilbiss did not file counter affidavits in opposition to the motion.

The district court granted the defendants' motion for summary judgment. The court reasoned that since DeVilbiss failed to request preliminary injunctive relief with respect to the construction of the facility, and since the complaint neither sought damages nor the removal of any structure but merely requested that construction be enjoined and building permits not be issued, the completion of the structure rendered DeVilbiss's complaint moot.

Snowmass Coal Company is a general partnership organized under the laws of Colorado, of which fifty percent is owned by Lark Mining, Inc., and fifty percent by Roaring Fork Coal Corporation.

3. C.R.C.P. 12(c) provides when a motion for judgment on the pleadings is made and matters outside the pleadings are presented, the motion shall be treated as a motion for summary judgment and disposed of accordingly.

DeVilbiss appealed to the court of appeals, which reversed the judgment of dismissal. The court of appeals held that the filing of the complaint put the defendants on notice that any efforts at constructing the facility would be at the defendants' peril and that the filing of the complaint "entitles plaintiff, if successful, to a mandatory injunction ordering restoration of the status quo or modification of the facility to conform with zoning limitations." *DeVilbiss*, 690 P.2d at 262. We granted certiorari to consider whether DeVilbiss's failure to seek temporary injunctive relief pending the resolution of his C.R.C.P. 106 claim, coupled with the actual completion of the facility during the pending litigation, rendered moot his legal challenge to the validity of the height variance pursuant to which the facility was constructed and completed.

## II.

The central question in a mootness problem is whether a change in the circumstances that prevailed at the beginning of litigation has forestalled the prospect for meaningful relief. *See Crowe v. Wheeler*, 165 Colo. 289, 439 P.2d 50 (1968); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.3 (2d ed. 1984). Although there is no categorical rule that will resolve all mootness issues, an examination of case law discloses that the following factors play a predominant role in resolving a mootness claim when a court's equity jurisdiction is invoked with respect to a claim for permanent injunctive relief against the construction of a facility that has already been completed: the relative culpability or blamelessness of the party defendant in completing the project against which a permanent injunction is now sought; whether the party plaintiff sought some form of

temporary or preliminary injunctive relief in order to preserve the status quo during the pendency of the litigation; and the varied interests likely to be affected and the potential hardships likely to be caused by entertaining a claim for a permanent injunction with respect to the construction of the facility already completed.[4] If a court, after balancing these factors against each other in the context of the change in circumstances that has occurred since the inception of litigation, can say with fair assurance that the granting of permanent injunctive relief sought by the plaintiff would be manifestly inappropriate and inequitable under the total circumstances of the case, it may properly dismiss the injunctive claim as moot. We briefly examine each of the three factors involved in this balancing process.

## A.

Several of our prior decisions have focused on the culpability of a party's conduct in resolving a mootness issue. In *Werner v. Norden*, 87 Colo. 339, 287 P. 644 (1930), for example, the plaintiff sought to enjoin the issuance of a fraudulent tax deed. While the suit was pending, the county treasurer, a co-conspirator, issued the deed. This court held that injunctive relief was available to the plaintiff because the conduct sought to be enjoined was legally impermissible. 87 Colo. at 342, 287 P. at 646. *See also Taylor v. Melton*, 130 Colo. 280, 274 P.2d 977 (1954) (erection of structure in knowing violation of restrictive covenant does not render case moot); *Thornton v. Schobe*, 79 Colo. 25, 243 P. 617 (1925) (completion of building in violation of contract does not moot case). In contrast, claims have been dismissed under circumstances where a defendant, prior to the resolution of the case, completed the

---

**4.** Under factual circumstances different from those present here, other considerations might well be important to a determination of mootness. These considerations include: whether the matter is capable of repetition yet evading review, *see, e.g., Urevich v. Woodard*, 667 P.2d 760, 762 (Colo.1983); *Goedecke v. Dept. of Insts.*, 198 Colo. 407, 410, 603 P.2d 123, 124 n. 5 (1979),

and whether the matter involves a question of great public importance or an allegedly recurring constitutional violation, *see, e.g., Parker v. People*, 135 Colo. 206, 309 P.2d 605 (1957); *Van De Vegt v. Bd. of County Comm'rs*, 98 Colo. 161, 55 P.2d 703 (1936); *Bestway Disposal v. Public Utilities Comm'n.*, 184 Colo. 428, 520 P.2d 1039 (1974).

acts sought to be enjoined but did so in accordance with legal processes and not in ostensible violation of the rights of others. In *Ambrosio v. Baker Metropolitan Water & Sanitation District,* 139 Colo. 437, 340 P.2d 872 (1959), for example, the defendant water district acquired land from the plaintiffs by condemnation, erected a sewage treatment plant on it, and placed the plant in operation. This court held that the issues raised by the plaintiffs' separate injunction action to prohibit the water district from proceeding with the project were moot. Similarly, in *Kester v. Miami-Yoder Joint School District No. 60,* 146 Colo. 230, 361 P.2d 124 (1961), a plaintiffs' request for a permanent injunction prohibiting a school district from constructing a school was declared moot, primarily due to the fact that the school district had lawfully contracted for the construction project only after the trial court had denied the plaintiff's application for a temporary injunction. Implicit in these decisions is the determination that the defendant's conduct in completing the project in question was legally permissible at the time it was undertaken and was done in good faith.

B.

Equally significant to a determination of mootness is whether the party seeking permanent injunctive relief has sought some form of temporary or preliminary injunctive relief to preserve the status quo during the pendency of the litigation. *See Faulkner v. Georgia Power Co.,* 241 Ga. 618, 247 S.E.2d 80 (1978) (completion of transmission line renders moot request for mandatory injunction upon appeal); *Clarke v. Atlanta,* 231 Ga. 84, 200 S.E.2d 264 (1973) (issuance of building permit renders moot claim for injunctive and declaratory relief); *Sierra Club v. Louisiana Department of Wildlife & Fisheries,* 365 So.2d 880 (La.App.1978) (completion of bridge renders moot objection to validity of permit for bridge). The logic of placing a party who fails to seek temporary or preliminary injunctive relief in a disfavored position is inescapable. A temporary or preliminary injunction is a remedy specifically designed to maintain the status quo in order to preserve the trial court's power to decide the case on the merits. *Rathke v. MacFarlane,* 648 P.2d 648, 651 (Colo.1982); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2947 at 423 (1973). A party who seeks to enjoin presumptively legal conduct of another but who refuses to submit his case for a preliminary determination on the propriety of injunctive relief must bear some responsibility for a change in circumstances between the commencement of the action and the ultimate resolution of the case on the merits.[5]

We are not unmindful that C.R.C.P. 65(c) requires a party seeking temporary or preliminary injunctive relief to give security in such sum as the court deems proper "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained,"[6] and that this security requirement might possibly be viewed as an impediment to a party's seeking such relief. The amount of security, however, is discretionary with the court as long as it

5. Language in cases to the effect that a defendant in an injunction proceeding does the act sought to be enjoined at his peril, *see, e.g., Werner v. Norden,* 87 Colo. 339, 343, 287 P. 644, 646 (1930); *Grattan v. Wilson,* 82 Colo. 239, 243, 259 P. 6, 8 (1927); *Thornton v. Schobe,* 79 Colo. 25, 29, 243 P. 617, 618 (1926), must be read in the context of the culpable behavior of the defendant vis-a-vis the innocent conduct of the plaintiff.

6. C.R.C.P. 65(c) states:
No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the

court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the state or of any county or municipal corporation of this state or of any office or agency thereof acting in official capacity. If at any time it shall appear to the court that security given under this Rule has been impaired or is insufficient, the court may vacate the restraining order or preliminary injunction unless within such time as the court may fix that security be made sufficient.

bears a reasonable relationship to the potential costs and losses caused by a preliminary injunction which is later determined to have been improperly granted. 11 Wright & Miller § 2954 at 525–26. Because the granting of a preliminary injunction is appealable under C.A.R. 1(a)(3), the security requirement of C.R.C.P. 65(c) can be limited to the probable costs and damages attributable to the cessation of activity during this preliminary phase of the case.

Moreover, under our prior case law interpreting the former version of C.R.C.P. 106(a)(4) applicable to this case, a party filing a C.R.C.P. 106(a)(4) claim was able to avoid the requirement of posting security by requesting a stay order concurrently with the filing of the action. *PII of Colorado v. District Court*, 197 Colo. 239, 591 P.2d 1316 (1979). When such a request was made, the district court was empowered to stay the governmental action being challenged without regard to the security requirements of C.R.C.P. 65.[7] Although such a stay order could not have been directed to the nongovernmental defendants joined in the C.R.C.P. 106(a)(4) action, a stay order directed to the governmental parties often would achieve the same practical effect as a preliminary injunction directed to all parties. *See PII*, 197 Colo. at 241, 591 P.2d at 1318.

### C.

In the context of a claim for a permanent injunction against the construction of an already completed project, resolution of the mootness issue also involves an assessment of the interests likely to be affected and the potential hardships likely to be caused by granting the permanent injunctive relief requested. An equitable claim may be rendered moot by reason of the fact that the injunctive relief sought by a plaintiff is disproportionately severe in relation to the arguably improper conduct sought to be enjoined. *See, e.g., Richland Park Homeowners Association, Inc. v. Pierce*, 671 F.2d 935 (5th Cir.1982) (completion and refinancing of HUD-supported housing project mooted any challenge to the initial determination to subsidize the project's construction; although it was possible to fashion injunction against future HUD payments of rent subsidies on behalf of low income tenants, such relief was properly denied for several reasons, including the dubious value of such relief and the great hardship on the low income tenants); *Florida Wildlife Federation v. Goldschmidt*, 611 F.2d 547 (5th Cir.1980) (action to enjoin completion of federal highway project pending performance of environmental impact study was mooted by substantial completion of highway, especially since no stay on appeal had been sought).[8]

A mootness determination under such circumstances is consistent with the traditional equitable concept that the true value of injunctive relief is in the anticipation and prevention of probable prospective injury. *Board of County Commissioners v. Pfeifer*, 190 Colo. 275, 279, 546 P.2d 946, 948–49 (1976); *Wyman v. Jones*, 123 Colo. 234, 243, 228 P.2d 158, 162 (1951). Since equitable remedies are generally discretionary, D. Dobbs, *Remedies* § 2.4 at 52, a

---

7. We note in passing that although the version of C.R.C.P. 106(a)(4) in existence when this case was before the district court and the court of appeals did not require the posting of security in connection with a request for a stay order directed to the governmental officials joined as defendants in a C.R.C.P. 106 claim, *see PII of Colorado v. District Court*, 197 Colo. 239, 591 P.2d 1316 (1979), C.R.C.P. 106(a)(4) has since been substantially amended. The present version, which became effective on January 1, 1986, now provides in subsection (a)(4)(V) that the decision of the governmental body may be stayed "pursuant to Rule 65 of the Colorado Rules of Civil Procedure."

8. We recognize that under facts substantially different from those present here courts have rejected a mootness claim on the basis that the effects of conduct not enjoined by the trial court could nonetheless be undone without disproportionate hardship. *See, e.g., Rustad v. U.S. Air Force*, 718 F.2d 348 (10th Cir.1983) (expelled student could no longer graduate with class but other relief could still be fashioned); *Kirby v. U.S. Dept. of Housing & Urban Development*, 745 F.2d 204 (3d Cir.1984) (completion of a housing project for handicapped did not moot case since its destruction was not the only injunctive relief available).

consideration of the interests and hardships likely to be affected is particularly appropriate when the choice confronting the court is, on the one hand, the dismissal of a claim as moot and, on the other, an injunction requiring the complete removal or radical alteration of a construction project undertaken and completed at considerable expense and pursuant to governmental permit processes. *See Kester,* 146 Colo. 232, 361 P.2d 125; *Ambrosio,* 139 Colo. 437, 340 P.2d 872; *Golden Press, Inc. v. Rylands,* 124 Colo. 122, 235 P.2d 592 (1951).[9]

### III.

■ It is in light of the above considerations that we turn to the correctness of the court of appeals' reversal of the judgment of dismissal entered by the district court. We conclude that, contrary to the decision of the court of appeals, the trial court properly dismissed as moot DeVilbiss's claim for a permanent injunction.

We initially note that Snowmass Coal Company was not guilty of any legally impermissible or culpable conduct in proceeding with the construction of the coal-loading facility. The company sought and obtained from the Board of County Commissioners of Garfield County a special use permit which was conditioned on its obtaining a height variance from the Board of Adjustment. The Board of Adjustment granted the height variance, and Snowmass Coal Company obtained in due course various building permits from the Garfield County Building Official, the Colorado Mined Land Reclamation Board, and the Colorado Air Pollution Control Board. The fact that DeVilbiss elected to challenge the legal validity of the height variance and sought to permanently enjoin the construction of the facility did not somehow transform the company's continued activities, all of which were conducted under governmental permits, into legally impermissible and blameworthy conduct.

We also point out that the mere filing by DeVilbiss of a C.R.C.P. 106 action did not constitute a judicial restraint on the Snowmass Coal Company's activities. DeVilbiss could have sought, but failed to seek, either preliminary injunctive relief under C.R.C.P. 65(c) or a stay order under C.R.C.P. 106(a)(4) in order to preserve the status quo pending final resolution of the case on the merits. Although DeVilbiss argues that the expense of the security for costs and damages required by C.R.C.P. 65(c) would have been prohibitive, his failure to take any steps to obtain preliminary injunctive relief renders his argument speculative at best. Furthermore, no such security would have been required in connection with a stay order issued under C.R.C.P. 106(a)(4) and directed to the governmental defendants in the case. DeVilbiss could thus have avoided the requirement of security by requesting the district court, concurrently with his filing of the case, to stay the implementation of the height variance and the issuance of any permits thereunder pending the final resolution of the case on the merits. Since DeVilbiss made no effort to seek preliminary injunctive relief or a stay order in order to preserve the status quo, he is not in any position to complain of the very change in circumstances that he might have prevented by seeking such relief.[10]

Finally, in light of the change of circumstances occasioned by the completion of the

---

9. In *Hargreaves v. Skrbina,* 662 P.2d 1078 (Colo. 1983), this court, although not resolving the case on the basis of mootness, held that the removal of a building was barred by the equitable doctrine of relative hardship notwithstanding the fact that the building, constructed pursuant to permit, was in violation of a municipal ordinance.

10. We recognize that section 12.00 of the Garfield County general zoning resolution, adopted January 2, 1979, specifically authorizes a real estate owner within the district in which the proposed structure is to be located to institute an injunction or other appropriate action to prevent the construction of the structure or to seek its removal. While this section certainly provided DeVilbiss with standing to seek injunctive relief, it did not entitle him as of right to such relief. It was the prerogative of the trial court in this case to resolve whether the change in circumstances occasioned by the completion of the facility rendered DeVilbiss's claim moot.

coal-loading facility, we are satisfied that the granting of permanent injunctive relief sought by DeVilbiss would be highly inappropriate and fundamentally inequitable under the facts present here. DeVilbiss's claim for permanent injunctive relief could be satisfied only by a mandatory injunction requiring Snowmass Coal Company to remove the facility or radically alter its design. Such a remedy, in addition to being out of step with the general rule that injunctive relief should be primarily protective against future rather than past acts, would impose a substantial financial loss or hardship on Snowmass Coal Company for engaging in conduct that was expressly sanctioned by governmental action. In short, to require the removal of the coal-loading facility, which was built at a cost of $7.7 million pursuant to the governmental variance and permit processes, would be grossly disproportionate to any arguable legal error in the variance and permit procedures that led to the construction of the facility.

## IV.

We limit our holding to the particular facts of this case. When, as here, the defendant has applied for and received a variance and the necessary governmental permits for the construction of a coal-loading facility and then has proceeded at considerable expense to itself to complete the authorized facility during the pendency of litigation seeking to permanently enjoin the construction of the facility, when the plaintiff has challenged the legality of the variance and has sought a permanent injunction prohibiting the construction of the facility but has failed to seek any form of temporary or preliminary injunctive relief to prohibit the commencement of construction and to preserve the status quo during the pendency of litigation, and when the substantial interest of the defendant would be detrimentally affected by judicial relief in the form of a permanent injunction requiring the removal or radical alteration of the completed project, a trial court may properly conclude that the permanent injunctive relief sought by the plaintiff is so

inappropriate under the circumstances of the case as to render the plaintiffs' equitable claim moot. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of dismissal previously entered by the district court.

LOHR and KIRSHBAUM, JJ., do not participate.