Madeline Busby SCHWARTZ, deceased, by
and through the ESTATE OF Madeline
Busby SCHWARTZ, Petitioner

v.

Norman SCHWARTZ, Respondent.

No. 07SC353.

Supreme Court of Colorado,
En Banc.

May 12, 2008.

Sherrets & Boecker, LLC, James D. Sherrets, Omaha, NE, Attorney for Petitioner.

Joe Orell, Colorado Springs, CO, Attorney for Respondent.

Justice EID delivered the Opinion of the Court.

Madeline Busby Schwartz filed a petition for dissolution of her marriage to Respondent Norman Schwartz. Four months after the dissolution petition was filed, Madeline Schwartz filed a declaratory judgment action seeking to determine the validity of the antenuptial agreement between her and Norman Schwartz. The trial court ruled that the agreement was invalid, and certified its judgment as a final judgment for purposes of appeal. Madeline Schwartz appealed to the court of appeals. While the appeal was pending, Madeline Schwartz passed away, and the appeal was pursued by the Estate of Madeline Busby Schwartz ("Estate"). The court of appeals then dismissed the appeal, finding that Madeline Schwartz's death rendered the case moot. *In re Marriage of Schwartz*, No. 05CA2213, slip op. at 3, 2007 WL 852369 (Colo.App. Mar.22, 2007) (not selected for official publication).

We granted certiorari and now reverse the court of appeals. Under existing caselaw, Madeline Schwartz's death mooted the dissolution proceeding. Her death did not, however, moot the declaratory judgment action filed to determine the validity of the antenuptial agreement because resolution of that action will have a practical legal effect upon an existing controversy—namely, it will impact Norman Schwartz's recovery in the ongoing probate proceeding. We therefore hold that

the court of appeals erred when it dismissed the appeal of the trial court's ruling invalidating the antenuptial agreement, and we remand the case to that court to consider the merits of the Estate's appeal.

## I.

Madeline Schwartz filed a petition for dissolution of marriage on June 25, 2004. On October 22, 2004, she filed a motion for declaratory judgment concerning the validity of the antenuptial agreement. The agreement waives both spouses' marital property rights and prevents either spouse from obtaining a share of the other's estate, except by "subsequent provision in his or her will."

The trial court issued a declaratory judgment on May 9, 2005, setting aside the antenuptial agreement on the ground that Madeline Schwartz "did not act in good faith with a high degree of fairness towards [Norman Schwartz]." The court subsequently certified its judgment as a final judgment ready for immediate appeal under Rule 54(b) of the Colorado Rules of Civil Procedure, and Madeline Schwartz appealed.

While the appeal was pending, Madeline Schwartz passed away. The court of appeals then dismissed the appeal, without addressing its merits, on the ground that Madeline Schwartz's death had mooted the dissolution action. *In re Marriage of Schwartz*, No. 05CA2213, slip op. at 3. The court declined to vacate the trial court's judgment setting aside the antenuptial agreement. *Id.* at 6. Furthermore, Norman Schwartz is currently seeking an elective share of Madeline Schwartz's estate, and the court of appeals' opinion leaves it to the probate court to determine what preclusive effect, if any, to afford the trial court's judgment. *Id.* at 7. We granted certiorari to determine whether the court of appeals erred in failing to either rule on the Estate's appeal or expressly declare the trial court's declaratory judgment to be null and void as a result of Madeline Schwartz's death.[1]

## II.

■ Both parties argue that Madeline Schwartz's death did not moot the appeal of the trial court's judgment setting aside the antenuptial agreement. We agree.

■ The court of appeals has "initial jurisdiction over appeals from final judgments of the district courts." § 13–4–102, C.R.S. (2007). However, an appeal of a final judgment may be dismissed as moot if rendering a judgment would "have no practical legal effect upon an existing controversy." *Barnes v. Dist. Court,* 199 Colo. 310, 312, 607 P.2d 1008, 1009 (1980) (quoting *Crowe v. Wheeler,* 165 Colo. 289, 294, 439 P.2d 50, 53 (1968)). In the context of a declaratory judgment action, "jurisdiction exists only if the controversy contains a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim." *Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 561 (Colo.1996); *see also Crowe,* 165 Colo. at 294, 439 P.2d at 53 (stating that a declaratory judgment action is moot if "a judicial opinion would not serve to terminate any controversy or put to an end any uncertainty"). This case thus turns on whether a ruling by the court of appeals would have resolved some existing legal controversy concerning the trial court's judgment, notwithstanding Madeline Schwartz's death.

The required justiciable controversy did exist when Madeline Schwartz initially filed her motion for declaratory judgment. Rule 57 of the Colorado Rules of Civil Procedure allows "[a]ny person interested under a . . . written contract . . . [to] have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." C.R.C.P. 57(b); *see also* § 13–51–106, C.R.S. (2007) (same). The antenuptial agreement at issue here is a written contract. *See In re Lopata's Estate,* 641 P.2d 952, 956 (Colo.1982) ("[A]ntenuptial agreements receive the same scrutiny as any other contract . . . ."); *see also O'Dell v.*

---

1. Specifically, we granted certiorari on the following question: "Whether the court of appeals erred in failing to either rule on the Petitioner's appeal or expressly declare the May 9, 2005 order of the district court to be null and void as a result of the Petitioner's death and the abatement of the appeal."

*O'Dell,* 238 Iowa 434, 26 N.W.2d 401, 412 (1947) ("Antenuptial contracts ... are in no way different from any other ordinary contract."). And Madeline Schwartz had an interest in the agreement because she was a party to it. *See Constitution Assocs.,* 930 P.2d at 561 (noting that a contractual relationship creates a cognizable legal interest). Therefore, Madeline Schwartz was "entitled to seek a declaration of rights and obligations" under the agreement. *Id.* at 560–61 (applying Rule 57).

Contrary to the court of appeals' holding, Madeline Schwartz's death did not moot the controversy concerning the antenuptial agreement. The court of appeals reasoned that, because the death of a spouse prior to the entry of a dissolution decree moots a dissolution proceeding, *see Estate of Burford v. Burford,* 935 P.2d 943, 952 (Colo.1997), the appeal of the declaratory judgment action was rendered moot. *In re Marriage of Schwartz,* No. 05CA2213, slip op. at 3. But in this case, the declaratory judgment action was not dependent upon the dissolution proceeding.

Colorado law provides two methods for spouses to dispose of property upon the dissolution of their marriage. First, they may allow the trial court to do it. *See* § 14–10–106, C.R.S. (2007) (requiring the court to dispose of property in a dissolution proceeding); § 14–10–113(1), C.R.S. (2007) ("Disposition of property"). Second, they may take matters into their own hands and create an antenuptial agreement. *See* § 14–10–112(1), C.R.S. (2007) (An antenuptial agreement may provide for "the disposition of any property owned by either of [the spouses]."); § 14–10–112(2) (Antenuptial agreements are "binding upon the court."). Here, the trial court did not make a disposition of property in connection with a dissolution decree. Rather, the court issued a declaratory judgment invalidating the antenuptial agreement between Norman Schwartz and Madeline Schwartz. This judgment was not dependent upon the dissolution proceeding instituted by Madeline Schwartz because under Rule 57, Madeline Schwartz could have brought her declaratory judgment action regardless whether a dissolution proceeding had commenced. In other words, Madeline Schwartz's declaratory judgment action was capable of proceeding in the absence of a dissolution proceeding. Consequently, the termination of the dissolution proceeding did not automatically terminate the appeal of the declaratory judgment.

■ Instead, we must look to the antenuptial agreement itself to determine whether Madeline Schwartz's death mooted the controversy over its validity. Like other contracts, the antenuptial agreement here remains binding on the Estate after Madeline Schwartz's death. *See Colo. Nat'l Bank of Denver v. Friedman,* 846 P.2d 159, 170 (Colo. 1993) (collecting cases and stating "that the parties to a contract bind not only themselves but their personal representatives") (citation and quotation omitted); *see also In re Stever's Estate,* 155 Colo. 1, 6, 392 P.2d 286, 288 (1964) (applying antenuptial agreement after death of one spouse); *In re Marriage of Ingels,* 42 Colo.App. 245, 247, 596 P.2d 1211, 1213 (1979) ("Several cases in this jurisdiction have recognized that antenuptial agreements are generally valid and enforceable if the parties' marriage is terminated by death."); *In re Barnes' Estate,* 41 Colo.App. 246, 247, 586 P.2d 238, 239 (1978) (applying antenuptial agreement after death of one spouse). In fact, the agreement provided for its post-mortem application, as it explicitly prohibited either spouse from obtaining a share of the other's estate without the express authorization of a subsequent will. Moreover, the validity of the agreement will affect pending probate proceedings because Norman Schwartz is seeking to avoid the agreement altogether and claim an elective share of Madeline Schwartz's estate. For these reasons, there still exists a justiciable controversy, despite Madeline Schwartz's death, concerning the trial court's declaratory judgment setting aside the antenuptial agreement, and a ruling by the court of appeals would have a practical legal effect on that controversy. *See Barnes,* 199 Colo. at 312, 607 P.2d at 1009. Therefore, the Estate's appeal is not moot.

### III.

We reverse and remand the case to the court of appeals for it to consider the merits

of the Estate's appeal of the trial court's declaratory judgment setting aside the ante-nuptial agreement.