24CA0072 Northside v Notes Live 09-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0072
El Paso County District Court No. 23CV31839
Honorable David Shakes, Judge

---

Northside Neighbors Association, a Colorado nonprofit corporation, and Michael Kuhn,

Plaintiffs-Appellants,

v.

Notes Live, Inc., a Colorado corporation, Notes Live Real Estate and Development LLC, a Colorado limited liability company, and City of Colorado Springs, Colorado, a municipal corporation,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

---

Covenant Law PLLC, Ian Speir, Colorado Springs, Colorado; First & Fourteenth PLLC, Edward A. Gleason, Colorado Springs, Colorado, for Plaintiffs-Appellants

Kern Law, LLC, Tobin D. Kern, Littleton, Colorado, for Defendants-Appellees Notes Live, Inc. and Notes Live Real Estate and Development LLC

Wynetta Massey, City Attorney, Emily Vandenberg, Attorney, Colorado Springs, Colorado, for Defendant-Appellee City of Colorado Springs

¶ 1     Plaintiffs, Northside Neighbors Association and Michael Kuhn (Neighbors), challenge a forthcoming open-air concert venue, developed by Notes Live, Inc. and Notes Live Real Estate and Development LLC (jointly, Notes Live), that they claim will violate Colorado's Noise Abatement Act (NAA). *See* §§ 25-12-101 to -110, C.R.S. 2024. Neighbors appeal the district court's judgment granting the motions of defendants, Notes Live and the City of Colorado Springs (the City), to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1).

¶ 2     Concluding that this case does not yet present a justiciable dispute upon which we can rule, we do not resolve the posed question of statutory interpretation, which currently splits divisions of this court. *Compare Hobbs v. City of Salida*, 2024 COA 25, *with Freed v. Bonfire Ent. LLC*, 2024 COA 65. Instead, we affirm the district court's conclusion that the dispute is not yet ripe for review.

## I.     Background

¶ 3     According to Neighbors' complaint, Notes Live proposed a development project to City officials to construct and operate Sunset Amphitheater (the venue). The venue is an outdoor, live entertainment amphitheater with the capacity to seat 8,000 people.

It is located on the east side of Interstate-25 near the North Gate Boulevard exit, as shown on the map below:



Project Location

¶ 4     After over a year of proceedings, the City approved the proposed development. Neighbors, who reside in neighborhoods at varying distances from the venue, claim they are not appealing the regulatory process approving the venue's development; instead, they assert that the venue will violate the NAA and the City's corresponding noise ordinances.

A.     Permitting Process and Anticipated Noise Impacts

¶ 5      On November 9, 2022, the City's Planning Commission approved a planned unit development (PUD) allowing Notes Live to construct the venue.  The next January, the City Council rejected a citizen-led administrative appeal challenging the Planning Commission's decision and approved the PUD.  Neighbors were not named as appellants in the administrative appeal.

¶ 6      The City's PUD process required Notes Live to submit, as relevant here, two sound studies.  After the Planning Commission deemed the first report, prepared by Merck & Hill Consultants, "not robust enough," it required Notes Live to provide a second report.

¶ 7      The second report, prepared by LSTN Consultants, concluded that "without mitigation, the venue may intermittently exceed the limitations set in the noise code."  It went on to suggest various physical, electroacoustic, and operational mitigation measures that

3

could be implemented to bring noise levels into compliance for the existing neighborhoods that surrounded the venue.[1]

¶ 8    The approved PUD plan incorporated the following sound mitigation measures recommended in the report:

- constructing sound walls and buildings to act as physical barriers;

- installing sound detection equipment;

- measuring and reporting sound levels during events;

- entering contracts with performers that require them to comply with Notes Live's noise mitigation directions;

- observing specified times for sound checks to limit disturbances; and

- observing end times of 10:30 p.m. on weeknights and 11:30 p.m. on weekend nights.

---

[1] Notes Live admitted that no amount of mitigation would prevent noise violations as to an apartment complex being built next to the venue, Polaris Junction Apartment Homes, but explained that arrangements were made with the building's owner so that notice of the venue's operations and sound impact would be incorporated in prospective tenants' lease agreements.

The approved PUD also provided that, once concerts begin, *if* the sounds emanating from the venue exceed the City's limits, a "noise hardship permit" must be secured.

¶ 9     Under Colorado Springs' city code, the mayor is empowered to grant permits to exceed the City's noise limits (which mirror those in the NAA). *See* Colo. Springs City Code §§ 9.8.104, 9.8.109. Per the city code, such hardship permits are available when (1) additional time is needed to come into compliance with the City's noise limitations, or (2) the source of noise is temporary and cannot comply with the noise limitations. *Id.* § 9.8.109. For the mayor to have authority to grant the hardship permit, there must be no other reasonable alternative, and the mayor is authorized to impose any conditions or requirements necessary to minimize adverse effects to the surrounding neighborhood and community. *Id.*

¶ 10     Neighbors allege that the City has an unspoken practice of granting "blanket" hardship permits annually for repeat applicants. The City and Notes Live both aver (with record support) that the City has not yet issued any hardship permits for the venue. On appeal, the parties represent that the first concert took place on

August 9, 2024 — mere weeks before the announcement of this opinion.

### B. Neighbors' Claims and their Dismissal

¶ 11    Neighbors filed a complaint against Notes Live and the City seeking declaratory judgment under C.R.C.P. 57 and injunctive relief.  Neighbors sought judgment against Notes Live declaring that (1) the venue constitutes a public nuisance, and (2) the noise study prepared by LSTN is legally inadequate.  As to the City, Neighbors asked for judgment declaring that (1) the city code provision allowing for hardship permits, Colo. Springs City Code § 9.8.109, is preempted by the NAA; and (2) the City's purported policy of granting annual "blanket" hardship permits violates the city code and the NAA.

¶ 12    In addition to the requested declarations, Neighbors asked for preliminary and permanent injunctive relief as follows:

- that Notes Live cease constructing the venue and/or conducting events until it can demonstrate compliance with the NAA;

- that the court commission and supervise an "objective, legally compliant" noise study;

- that the City delete its hardship permit code provision; and

- that the City be barred from permitting noise levels in excess of the NAA.

¶ 13    The City and Notes Live moved to dismiss Neighbors' complaint under Rule 12(b)(1), asserting that there was not yet a justiciable controversy.  The district court granted the respective motions to dismiss, finding that the issue was not justiciable due to lack of an actual injury, thus depriving the court of subject matter jurisdiction to proceed.  To the extent the complaint challenged the City's decision to approve the venue, the district court said, that challenge was brought too late.

¶ 14    Neighbors appeal the dismissal orders.

## II.    Subject Matter Jurisdiction

¶ 15    On appeal, Neighbors claim that the court's orders created an untenable paradox wherein their claims were simultaneously brought too early and too late.  But after untangling Neighbors' various claims for relief, we disagree.

¶ 16    Neighbors assert that their claims do not challenge the City's approval of the venue's development under C.R.C.P. 106.  This is

unsurprising given that such claims needed to be brought within twenty-eight days of when the City approved the project. *See Freed*, ¶ 10. Neighbors do not dispute that they filed their complaint almost eight months after the City approved the PUD. But to the extent that Neighbors' complaint challenged the PUD approval — and specifically, the competence of the LSTN noise report — that argument needed to be raised within twenty-eight days of the City's approval of the project. *See* C.R.C.P. 106(b); *see also Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 46 (Rule 106(b)'s twenty-eight-day filing requirement is a "strict jurisdictional limitation," and therefore that deadline is not subject to equitable tolling or excusable neglect). We agree with the district court's Rule 106 assessment on that narrow ground.

¶ 17 To the extent that Neighbors' claims pertained to the City's purported grant of a "blanket" hardship permit and to Notes Live's imminent NAA violations, they relied on facts that have not yet occurred (or more precisely, that occurred after the perfection of this appeal). As of the district court's orders and our appellate review, based on the record before us, no permits or hardship

permits had been issued and no concerts exceeding statutory noise limitations had occurred.

¶ 18    Contrary to Neighbors' framing, the bottom line is that one of their claims for relief was brought too late.  The rest were brought too early because they relied on events that have not yet happened.  Those claims — which appear to be the linchpin of Neighbors' appellate arguments — implicate ripeness and standing doctrines, on which the court's subject matter jurisdiction to act depended.  Therefore, we begin with that inquiry.

### A.    Justiciability Principles and Standard of Review

¶ 19    To have standing, a plaintiff must allege an injury in fact to a legally protected interest.  *Weld Cnty. Bd. of Cnty. Comm'rs v. Ryan*, 2023 CO 54, ¶ 9.  Claimed injuries that are a mere "remote possibility" do not confer standing.  *Id.* at ¶ 10 (citation omitted).

¶ 20    A separate, though related, prerequisite to justiciability is ripeness.  *Zook v. El Paso County*, 2021 COA 72, ¶ 15.  A court lacks subject matter jurisdiction to decide an issue that is not ripe for adjudication.  *Id.* at ¶ 7.  Ripeness requires that there be an actual case or controversy between the parties that is sufficiently immediate and real so as to warrant adjudication.  *Jessee v.*

*Farmers Ins. Exch.*, 147 P.3d 56, 59 (Colo. 2006). A case is not ripe if uncertainty exists regarding future facts relevant to the dispute, the claimed injury is speculative and may never occur, or a pending action might resolve the issue prior to the court's determination. *See Stell v. Boulder Cnty. Dep't of Soc. Servs.*, 92 P.3d 910, 914 n.6 (Colo. 2004); *Zook*, ¶ 9. In determining whether an issue is ripe, courts consider the hardship to the parties if relief is withheld and the fitness of the issues for judicial decision, which often comes down to whether the record is adequate to permit effective review. *Stell*, 92 P.3d at 915. "We determine ripeness on the basis of the situation at the time of review, not the situation existing when the trial court acted." *Developmental Pathways v. Ritter*, 178 P.3d 524, 534 (Colo. 2008). But in doing so, we are limited to the record before the district court at the time of its ruling. *Stell*, 92 P.3d at 915.

¶ 21 The declaratory judgment statute provides a means to resolve uncertainty regarding rights between parties that a court might not otherwise consider. *See Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 105 P.3d 653, 656 (Colo. 2005). Section 13-51-102, C.R.S. 2024, authorizes district

10

courts "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *See also* C.R.C.P. 57(k).

¶ 22    Nevertheless, this grant of authority does not allow a court to consider a case that is not justiciable. *Nat'l Union,* 105 P.3d at 656. In other words, where parties seek declaratory relief, an actual controversy must exist. *Brookhart v. Reaman,* 2023 COA 93, ¶ 19. The mere possibility of a future claim is insufficient. *Schwartz v. Schwartz,* 183 P.3d 552, 553 (Colo. 2008). A declaratory judgment "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Cacioppo v. Eagle Cnty. Sch. Dist. Re-50J*, 92 P.3d 453, 467 (Colo. 2004) (citation omitted). "No court can appropriately adjudicate a matter — even one for declaratory judgment — 'in the absence of a showing that a judgment, if entered, would afford the plaintiff present relief.'" *Id.* (citation omitted).

¶ 23    In the nuisance context, Colorado law prohibits injunctive relief against a threatened nuisance when it is possible that the activity might be accomplished lawfully, especially where future injunctive relief remains available if the threatened nuisance does,

11

in fact, ripen into one. *See Green v. Castle Concrete Co.*, 509 P.2d 588, 591 (Colo. 1973) ("[B]road injunctive powers may not be used in advance to prohibit lawful business activity which may not be a nuisance."); *see also Ryan v. Pitkin Iron Corp.*, 444 F.2d 717, 719 (10th Cir. 1971).

¶ 24    "We apply a mixed standard of review to a district court's dismissal of a claim under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction." *Save Cheyenne v. City of Colorado Springs*, 2018 COA 18, ¶ 61. We review the district court's factual findings for clear error and its legal conclusions de novo. *Id.*

¶ 25    We may consider jurisdictional prerequisites at any time during the proceedings. *See Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7. We review de novo whether a plaintiff has established standing, *Colo. State Bd. of Educ. v. Adams Cnty. Sch. Dist. 14*, 2023 CO 52, ¶ 19, and whether an issue is ripe for review, *Zook,* ¶ 6.

### B.    State and City Noise Laws

¶ 26    In adopting the NAA, the General Assembly sought to "establish statewide standards for noise level limits for various time periods and areas," the violation of which "constitutes a public

12

nuisance."[2]  § 25-12-101.  Neighbors point to NAA section 25-12-104, C.R.S. 2024 — which provides a cause of action in equity "to abate and prevent" nuisances — and the City's corresponding code provisions (Colo. Springs City Code §§ 9.8.101 to 9.8.104) as the source of relief for their claimed harm.  Section 25-12-104, as relevant here, provides:

> Whenever there is reason to believe that a nuisance exists . . . any . . . resident of the state may maintain an action in equity in the district court of the judicial district in which the alleged nuisance exists to abate and prevent such nuisance and to perpetually enjoin the person conducting or maintaining the same and the owner, lessee, or agent of the building or place in or upon which such nuisance exists from directly or indirectly maintaining or permitting such nuisance.

---

[2] Property that is residentially zoned may not radiate noise exceeding 55 db(A) during the day (7 a.m. to 7 p.m.) and 50 db(A) at night (7 p.m. to 7 a.m.).  § 25-12-103(1), C.R.S. 2024.  Property that is commercially zoned may not radiate noise exceeding 60 db(A) during the day and 55 db(A) at night.  *Id.*  "[N]oise radiating from a property line at a distance of twenty-five feet or more therefrom in excess of [the noise limit] shall constitute prima facie evidence that such noise is a public nuisance."  *Id.*  For purposes of this opinion, we need not decide whether the venue, which is zoned "PUD-Planned Unit Development-Commercial High Rise," is residentially or commercially zoned within the meaning of the NAA.

¶ 27    Nothing in this section contemplates a prospective declaration for a future or threatened nuisance.  Rather, as is stated three times in the statutory text, a nuisance must *exist* before the court can act.  *See In re Marriage of Oberg*, 900 P.2d 1267, 1270 (Colo. App. 1994) (referring to a dictionary to conclude that "existing" means an actual or present occurrence); *Kinslow v. Mohammadi*, 2024 CO 19, ¶ 11 (if a statute's language is clear and unambiguous, we apply it as written).

¶ 28    Relatedly, the General Assembly has expressly provided that the NAA "shall not be construed to preempt or limit the authority of any municipality or county to adopt standards that are *no less restrictive*" than those it established.  § 25-12-108, C.R.S. 2024 (emphasis added).  The City's noise limitations are generally consistent with the NAA.  *See* Colo. Springs City Code § 9.8.104.

### III.    Application

¶ 29    Applying de novo review based on the record before us, *Save Cheyenne*, ¶ 61, we conclude that Neighbors' claims fail to allege a currently justiciable issue or an existing legal controversy.  *See Green*, 509 P.2d at 591 (declining to enjoin activity at a quarry operation where speculation about the alleged "future harmful

14

effects" were not based on "any actual occurrences"). Because the district court properly dismissed the complaint for lack of subject matter jurisdiction under Rule 12(b)(1), we affirm.

### A. The Claims Against Notes Live Present a Future and Contingent Controversy

¶ 30 Neighbors are correct that a violation of the NAA's "establish[ed] statewide standards for noise level limits for various time periods and areas . . . constitutes a public nuisance." § 25-12-101. They are equally correct that section 25-12-104 provides a cause of action in equity "to abate and prevent" nuisances and to enjoin the person creating the nuisance from doing so. The problem here is not what the NAA says (or does not say); the problem is that Notes Live's alleged noise violations have yet to occur, may not occur at all, or may occur in a different way than anticipated.

¶ 31 For example, the LSTN report concluded that electroacoustic and physical mitigation efforts, together, could bring the venue into compliance with the NAA, even at the most restrictive noise limit for residential zones. Accordingly, the approved PUD incorporated those mitigation measures. The study and approved PUD provided

that noise monitoring must be performed in real time and reported to the City to monitor the effectiveness of these measures. Further, the noise level emanating from any particular event depends on the touring sound system used, which might require assessment of noise violations on a concert-by-concert basis. Because of these contingencies, Neighbors' asserted facts offered to prove the "imminence" of a noise violation are insufficient to establish standing and ripeness. Without a concrete injury fit for judicial review, the district court had no power to grant Neighbors' requested relief. *See Green*, 509 P.2d at 591; *Ryan*, ¶ 10.

¶ 32 We are aware that by the announcement of this opinion, the first concert at the venue may well have occurred. The parties generally agree that the first concert occurred on August 9, 2024, and as such, Neighbors might have been injured by noise exceeding the prescribed limits. But even so, our appellate record is insufficient to allow for effective review based on the foregoing contingencies. Even determining ripeness based on the situation at the time of our review, *Developmental Pathways*, 178 P.3d at 534, this appeal, as filed and on the record before us, is not fit for effective review. *See Stell*, 92 P.3d at 915.

16

¶ 33    Because Neighbors' claims depend on future and contingent facts (or facts that occurred after this appeal was filed), there is no justiciable controversy for this court to resolve as to Notes Live's prospective noise violations.  Neighbors should file suit if and when documented violations occur.  *See Green*, 509 P.2d at 591 (Withholding injunctive relief before the threatened nuisance becomes one "preserves to the complaining party the right to enjoin the activity if it in fact proves to be a nuisance.").

¶ 34    Finally, as to the Polaris Junction Apartment Homes, Neighbors point to Notes Live's admission that it will not be possible to comply with applicable noise limits as to that property.  But Neighbors have not alleged that any of their members reside there. Neighbors lack standing to litigate a claimed injury to a nonparty. *See Bd. of Educ.*, ¶ 21 (citing *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977)).

### B.    The Claims Against the City Also Present a Future and Contingent Controversy

¶ 35    Neighbors' claims against the City present similar justiciability problems.  For one thing, our appellate record contains no application by Notes Live for a hardship permit under section

9.8.109 of the city code.  Relatedly, there is no record that the City (or its agent) approved a hardship permit for the venue.  In fact, an April 2023 letter responding to an inquiry from Neighbors' counsel unequivocally says:

> You . . . ask whether the City has in fact granted a hardship permit to the Sunset Amphitheater.  The answer to this question is no.  The Sunset Amphitheater has neither applied for nor received a noise hardship permit under City Code § 9.8.109.  As the venue does not currently exist, it is unknown whether events at the venue will exceed allowable decibel limits such that a permit would be required under City ordinances.  Further . . . a hardship permit can only be submitted when the required details of the specific event are known.

¶ 36    While it is possible that the City (or its agent) could grant Notes Live a hardship permit, the details of any application and associated public proceedings are unknown.  Even the claim for a judicial declaration that the hardship permit provision of the city code is preempted by the NAA must arise from an injury in fact.  *See Freed*, ¶ 20 (citing *State v. Hill*, 2023 CO 31, ¶ 10).  Thus, absent an existing injury caused by an actual hardship permit, a declaratory judgment claim under C.R.C.P. 57 is not justiciable.  *See Schwartz*, 183 P.3d at 553.

18

¶ 37    Neighbors try to circumvent this problem by noting that even absent a permit, the *policy* of issuing hardship permits on an annual basis exists now. Even assuming that such a policy exists, Neighbors have not yet suffered any injury in fact from the existence of the claimed policy. At most, Neighbors face the risk that the City might approve one or more hardship permits; this allegation, at best, identifies a speculative future injury.

¶ 38    We are not persuaded by Neighbors' reliance on *Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, 830 P.2d 1045 (Colo. 1992), for the proposition that it can secure injunctive relief before harm occurs. In that case, La Plata County enacted regulations declaring it was unlawful to construct or install an oil and gas facility within the unincorporated area of the County without first obtaining a permit. *Id.* at 1050. Plaintiff needed to immediately comply with the regulation or risk a penalty for noncompliance. *Id.* at 1053. The court concluded that plaintiff met the jurisdictional requirement for standing because the regulation threatened to injure plaintiff's present or imminent activities. *Id.* In contrast, Neighbors do not point to a present or imminent nuisance under the NAA or the city code, as relevant to this appeal. All the

claimed injuries are merely anticipated, and if and how they will manifest remains to be seen. Thus, *Bowen/Edwards* is distinguishable.

¶ 39 Neighbors also rely on *Zoning Board of Adjustment v. DeVilbiss,* 729 P.2d 353 (Colo. 1986), in support of their argument that waiting too long to seek relief might deprive them of a judicial remedy. True, the *DeVilbiss* court concluded that claims were moot when the challenged facility had been built and became operational. *Id.* at 355-56. But there, the *DeVilbiss* plaintiffs were pursuing a Rule 106 claim challenging the zoning board's actions. *Id.* at 354. Neighbors admit that they did not file a Rule 106 action challenging the City's PUD approval. They assert on appeal that their primary challenges need not have been brought via such an action because the NAA provides another avenue for relief. And it will in time, assuming an actual violation eventually occurs. Accordingly, *DeVilbiss* is distinguishable.

¶ 40 While this action cannot serve as a backdoor to bring claims challenging components of the City's PUD approval, Neighbors are free to challenge the City's issuance of a "blanket" hardship permit

(if one comes into existence) within twenty-eight days of its issuance under Rule 106.

¶ 41 Because the details of the future contingencies (that Notes Live and the City will, respectively, violate the NAA by hosting concerts that violate established noise limits and by issuing hardship permits allowing such events) are not yet known, the case is not ripe for adjudication. *See Theobald v. Bd. of Cnty. Comm'rs*, 644 P.2d 942, 950 (Colo. 1982) (without an allegation that the property owner applied for and had been denied a proposed use of its property, the claims did not present an actual controversy for adjudication). Neighbors' declaratory judgment claims fail to allege a currently justiciable issue or an existing legal controversy. We thus conclude that the district court properly dismissed the complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

## IV.   Other Issues

¶ 42 While this case is the third in a series of appeals asking us to determine the meaning of a statutory exemption to our state's NAA, we need not reach that question here because we do not have subject matter jurisdiction over the dispute. In any event, it will

ultimately be up to the Colorado Supreme Court to weigh in on competing interpretations of the statute.  *Compare Freed*, ¶ 42, *with Hobbs*, ¶ 36.

¶ 43     Notes Live asks us to award appellate attorney fees, contending that Neighbors' appeal is groundless and frivolous.  *See* § 13-17-102(4), C.R.S. 2024; C.A.R. 39.1.  Under C.A.R. 38(b), the appellate court may award attorney fees as a sanction for filing a frivolous appeal.  And attorney fees may be awarded under section 13-17-102(4) when the court determines that an attorney or party brought an action that lacked substantial justification, meaning that the action was substantially frivolous, groundless, or vexatious.  § 13-17-102(9)(a).

¶ 44     An appeal may be frivolous as filed or as argued.  *Calvert v. Mayberry*, 2019 CO 23, ¶ 45.  An appeal is frivolous as filed if "there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position so clear.'"  *Id.* (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)).  An appeal is frivolous as argued if the appellant fails to set forth a coherent assertion of error supported by legal authority.  *Id.*

¶ 45    Although Neighbors did not prevail, we do not believe their arguments were frivolous as filed or as argued, especially when this appeal would have invoked an unsettled question of Colorado law (and might still) if raised at the proper time.  We therefore deny Notes Live's request for attorney fees.

## V.    Disposition

¶ 46    The district court's judgment is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.